## FELDER v. PAULK.

HINES, J. 1. Where Paulk conveyed to Felder, his son-in-law, his plantation of 1800 acres, and much personalty, in consideration of the agreement of Felder to pay all the debts of Paulk, including a debt secured by deed to the dwelling-house and lot of Paulk, and where Felder paid off this debt, but took a transfer from the holder of the note given for this debt and of the deed securing the same, a court of equity has jurisdiction, after demand by Paulk upon Felder for the surrender of said note and deed and the cancellation of the latter, and upon the refusal by Felder to comply with such demand, to require Felder to surrender said note and deed for cancellation. Civil Code (1910), § 5465; *Hollingshead* v. *McKenzie*, 8 *Ga.* 457; *Sims* v. *Sims*, 162 *Ga.* 523 (134 S. E. 308).

2. Where the conveyance from Paulk to Felder was intended to embrace all the parcels of land constituting Paulk's plantation of 1800 acres, but by inadvertence this conveyance did not embrace two parcels of land forming part of this plantation, to which two parcels a bank held a deed from Paulk to secure debt, with power of sale, which debt Felder was to pay as part of the purchase-price of this plantation, and where Felder did not pay this debt to the bank, but permitted the bank to sell these two parcels of land under its power of sale and buy them in, and then took from the bank a quitclaim deed to these parcels, the consideration of this conveyance representing Paulk's indebtedness to the bank; and where Felder had been put in possession of this plantation, including said two parcels, by Paulk, at the time of the conveyance by Paulk to him of said plantation, and his possession had been undisturbed, he can not set up in defense to this suit the above facts. In equity Felder will be treated as having paid the debt of Paulk to this bank, and the conveyance by the bank to him will be treated as a conveyance by Paulk to him of these two parcels. *Henderson* v. *Lott*, 163 *Ga.* 326 (136 S. E. 403).

3. R. C. Singletary sold and conveyed to Paulk, on credit, a tract of land containing 185 acres, for the price of $1500, and simultaneously took from Paulk a deed to this land to secure the purchase-money. This tract was a part of the Paulk plantation. This debt of Paulk to Singletary was one of the debts which Felder assumed and agreed to pay as a part of the consideration which he was to pay for this plantation. Subsequently, by agreement between Paulk, Felder, and Singletary, the contract of purchase of this land was rescinded by the payment to Singletary by Felder of $300, and the release of Felder from the payment of the debt due by Paulk to Singletary on the purchase-money of this tract, and Paulk and Felder conveyed this tract back to Singletary. This transaction was entirely satisfactory to Felder. These facts furnished to Felder no defense to the present suit.

Cancellation of Instruments, 9 C. J. p. 1192, n. 62; p. 1206, n. 23.
Damages, 17 C. J. p. 807, n. 77; p. 808, n. 80.
Equity, 21 C. J. p. 180, n. 89.
Fraudulent Conveyances, 27 C. J. p. 660, n. 65.

4. Paulk owned a dwelling-house and lot in Blakely, known as the Roberts place. Paulk had borrowed from a bank $1000, and to secure this loan had executed to the lender his deed to this house and lot. This was one of the debts which Paulk contended that Felder had agreed to pay and did pay as part of the consideration which Felder was to pay Paulk for the Paulk plantation. Felder admitted that he agreed to pay this debt, but denied that he was to pay it as part of the consideration which he was to pay Paulk for his plantation, but on the contrary he contended that he was to have this house and lot and that Paulk was to convey this property to him. The jury found against this contention of Felder, and in favor of Paulk's contention. Paulk admitted that he subsequently agreed to relieve Felder from the payment of this debt, but that Felder went ahead and paid the debt anyway, under his agreement touching the purchase of this plantation. *Held,* that these facts do not furnish to Felder any defense to the present action.

5. There was evidence authorizing a finding that Felder refused to pay the debts of Paulk; that he advised Paulk to go into bankruptcy, as one of his creditors was about to sue him, and this would prevent the performance by Felder of his agreement to pay the debts of Paulk; that he advised Paulk to see a named lawyer, which Paulk did; that in consequence Paulk filed his voluntary petition in bankruptcy, and was adjudged a bankrupt; that Paulk made an offer of composition to his unsecured creditors of fifty cents on the dollar, which was accepted; and that Felder furnished the money with which this composition was effected. Felder contended that this offer of composition, in view of Paulk's contention that he was to pay all of Paulk's debts, was a fraud against his creditors, and that this fraud debars him from seeking the relief prayed, as he does not come into equity with clean hands. *Held:*

(a) When both parties are at fault, and equally so, equity will not interfere, but leaves them where it finds them. The rule is otherwise if the fault of one overbalances, decidedly, that of the other. Civil Code (1910), § 4534.

(b) Conceding but not deciding that Paulk was guilty of any fraud against his creditors in his bankruptcy proceeding, Paulk is not basing his right to recover in this case upon his offer of composition, its acceptance by his creditors, and its performance by him with money furnished by Felder; but his right of action is based upon the previous contract made between him and Felder, by which he conveyed to Felder his plantation, and in consideration of which Felder was to pay all his debts, including a debt to the Citizens Bank, secured by deed from Paulk to that bank, which would result in discharging the incumbrance upon Paulk's dwelling-house and lot, and upon his right to have canceled the note given for said debt and the deed executed by him to secure the same, when it was paid off by Felder in pursuance of this agreement.

(c) Besides, if any fraud was committed upon Paulk's creditors in the bankruptcy proceeding, Felder was a party thereto, and the fault of Felder in this matter decidedly overbalances that of Paulk.

6 "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Civil Code (1910), § 4392.

(a) In an action to recover damages for breach of contract of sale by the buyer, including expenses incurred by the buyer in carrying same out, and a cash payment on the purchase money, and for cancellation of the contract, this court held that attorneys' fees might be allowed by the jury where the defendant had acted in bad faith and caused the plaintiff unnecessary trouble and expense. *Mendel* v. *Leader*, 136 *Ga.* 442 (71 S. E. 753). By parity of reasoning, where suit is brought by the maker to cancel a note and deed to secure the same, against the defendant who, for a valuable consideration, had agreed to pay off the note and cancel the same of record, and who had paid off the note but who had taken a transfer to himself of the note and of the deed to secure it, and who had refused, upon demand, to surrender the note and cancel the deed, the jury trying the case might allow attorneys' fees for such breach of his contract by the defendant, where he had acted in bad faith, and caused the plaintiff unnecessary trouble and expense. *Mendel* v. *Leader*, supra.

(b) There was evidence which authorized a finding that the defendant had acted in bad faith, and had put the plaintiff to unnecessary trouble and expense in having to bring the present action against the defendant for the surrender of the note and for the cancellation of the security deed, which was a cloud upon his title.

*Judgment affirmed. All the Justices concur.*

No. 5918. OCTOBER 15, 1927.

Equitable petition. Before Judge Yeomans. Early superior court. February 19, 1927.

A. Paulk filed his petition against I. D. Felder, making the following allegations: In 1919, and for many years before, petitioner was engaged in farming. He owned a plantation containing 1800 acres, more or less, known as the Paulk place. He likewise owned a described house and lot in the city of Blakely. On October 31, 1919, he gave to the Citizens Bank of Blakely his note for $2161.17, payable October 26, 1920, for money borrowed. To secure its payment he executed and delivered to the bank his security deed of even date, embracing said house and lot, and containing a power of sale. Thereafter he became financially embarrassed and sorely in need of money, which he was unable to borrow. His entire indebtedness approximated $31,000. His entire assets were of the approximate value of $70,000. In the latter part of December, 1919, or early in January, 1920, he entered into an agreement with I. D. Felder, his son-in-law, in whom he reposed special trust and confidence, whereby he was to convey to Felder said plantation, together with all live-stock, farming machinery, tools and equipment, farm products and supplies on hand, and other assets connected with the farming enterprise, in sole

consideration of which Felder assumed the payment in full of petitioner's entire indebtedness, including his debt to the bank. In pursuance of this agreement petitioner conveyed by deed to Felder said plantation, together with various described personal property. All of said property was at once, upon the execution of said conveyance, turned over to Felder, and he has since exercised full and exclusive control of the same as owner thereof. Before entering into this agreement, petitioner had with Felder a distinct understanding that he was to pay off and discharge the note held by the Citizens Bank, and thereupon have canceled of record the security deed, in order that this incumbrance might be removed from his residence and that he might save his home out of his financial wreck. During July, 1922, Felder did in fact pay to the bank said indebtedness; but instead of having said security deed marked satisfied, as he agreed to do, he procured said bank to transfer to him the note and the security deed. This deed was recorded on November 15, 1919, and operates as a cloud on petitioner's title. Felder refuses to deliver this deed to him, or to have it canceled of record, or otherwise to offer to petitioner any relief in the premises, although he has repeatedly called on Felder to remove said cloud, or to put it within the power of petitioner so to do. Felder is acting in utter bad faith, and with intent to harass, annoy, and defraud petitioner for the purpose of coercing him into an unconscionable compromise of his rights in the premises; and he has reason to apprehend that Felder, if not enjoined, will further carry out this purpose by assigning the note and security deed to a third person, or will undertake to exercise the power of sale in the deed, by which an additional cloud will be cast upon his title. By reason of this bad faith and wrongful conduct he has forced petitioner to incur a reasonable expense of $150 in employing an attorney to institute and prosecute this proceeding. Petitioner prayed for injunction against transfer of the note or security deed, and exercise of the power of sale; for judgment against the defendant for the amount of attorney's fees expended, and such other fees as he should be forced to incur in prosecuting this action; for cancellation of the note and security deed; and for general relief.

In his answer the defendant alleged: In January, 1921, plaintiff stated to him that he had become so involved financially

that he could not continue to operate his farm, and that he only desired to reserve a home for himself and wife so long as they should live. Defendant agreed to consider the matter, and requested the plaintiff to furnish him with a complete statement of his debts. Plaintiff, fearing that he was going to lose his home, before any definite conclusion in the premises was reached, had his attorney prepare a deed purporting to convey to the defendant that portion of his lands upon which George M. Forman had a security deed, but did not convey lot 394 containing 250 acres, and fifteen acres of lot 367 lying west of the river road, in the 28th district of Early County, and being a part of the plaintiff's plantation. He did not convey to defendant his house and lot in Blakely, or his own home, which he had proposed to do when he first broached the matter. The defendant declined to accept this deed at the time it was tendered to him, and paid no attention to what it purported to convey. About the same time plaintiff furnished a statement of his liabilities; but defendant, not being willing to pay the amount which plaintiff then owed for the property, declined to proceed further with the matter. Plaintiff immediately went into bankruptcy, and was adjudged a bankrupt. Before the first meeting of his creditors, he solicited defendant to advance money with which he could make a settlement with his creditors, and again offered, in the event he could settle with his creditors and regain the title to his property, to convey all of his property to defendant, subject only to the right of plaintiff to use his dwelling so long as he and his wife should live. Defendant agreed to this, if a settlement could be reached for an amount which he would be willing to pay. Negotiations were had by plaintiff and his attorney with the attorney representing the unsecured creditors; but no agreement could be reached, for the reason that these creditors demanded fifty per cent. of their claims in settlement, and defendant was not willing to pay that amount. On the day of the first meeting of creditors, the plaintiff, after his examination began, broke down and cried, and, to save him any further embarrassment and humiliation, the defendant obtained a suspension of the examination, and agreed with plaintiff to accept the proposal previously made by him to convey to defendant all of his property, subject only to the use of the property reserved as above stated, and to advance plaintiff an amount of money

sufficient to pay fifty per cent. of his unsecured debts, and the cost of administration, provided a settlement of the bankruptcy proceedings could be had upon that basis. The creditors agreed to a settlement. A formal offer of composition was made by the plaintiff and approved by the court, but was not finally consummated until the following May. Defendant then accepted delivery of the deed previously executed by the plaintiff, but did not notice that it conveyed only the land plaintiff had previously conveyed to George M. Forman as security for a loan. To carry out his part of the agreement defendant expended over $27,000, this having been paid to the creditors in satisfaction of plaintiff's debts, and of the costs in the bankruptcy proceeding. Defendant is entitled to a conveyance from the plaintiff of his dwelling-house in Blakely, subject only to an estate during the lives of plaintiff and his wife.

The defendant contends that the alleged contract set up and relied upon by plaintiff is void, because the defendant never assented to its terms; that it would be inequitable for the plaintiff to retain the money so advanced by the defendant to him, and at the same time recover in this action; that while it would be proper for the status between the parties to be restored, this under the conditions is impossible; that an accounting should be had, and the amount determined and fixed which the defendant has advanced to the plaintiff and expended in his behalf. He prays that the plaintiff be required to specifically perform his agreement and convey title to him to the property set forth in the contract, and to his dwelling-house and lot, subject to a life-estate therein for the plaintiff and his wife; that in the event specific performance should be found unauthorized, it be adjudged that the plaintiff is indebted to him for the sum of money advanced, with interest thereon; and that the property be sold and the proceeds derived therefrom applied to the payment of the indebtedness so fixed and determined.

Plaintiff introduced evidence tending to prove the allegations of his petition. He contended that he was to convey to the defendant his plantation of 1800 acres, in consideration of the payment by the defendant of all of his debts, secured and unsecured. He admitted that his deed to the defendant was intended to convey 1800 acres of land, but did not include lot 394 containing 250

acres, and 15 acres of lot 367 which formed a part of said place, and on which the First National Bank held a deed to secure debt. Felder did not pay this debt, and the bank sold the 265 acres under the power of sale in the security deed, and became the purchaser at the sale. Subsequently, by way of adjustment of the controversy, the bank quitclaimed the 265 acres to Felder, taking from him a deed to said land to secure his notes of approximately $4,400, representing Paulk's indebtedness to the bank, and on the payment of these notes the security deed was canceled of record. Felder has been in continuous and undisturbed possession of the entire 1800 acres in the Paulk place since plaintiff surrendered possession of that place to him in January, 1921.

Felder contended that Paulk was to convey to him the Paulk place, the Roberts house and lot in Blakely, and the house and lot in Blakely occupied by Paulk as his dwelling, Paulk to have the right to live in this dwelling during the life of himself and his wife. Paulk had purchased from one Singletary a tract of land upon credit of $1500. Singletary conveyed the land to Paulk, and Paulk executed to Singletary a deed to secure the payment of the purchase-price. No part of this debt was paid by Paulk. Subsequently there was a rescission of this trade, to which Felder was a party, he paying the accrued interest of $300 on the debt, and uniting with Paulk in reconveying the land to Singletary in payment of the purchase-price. Felder testified that it was satisfactory to him to turn the land back to Singletary, as by doing so he was relieved of paying the Singletary debt, and that he had no complaint to make about this 185 acres.

The jury returned a verdict in favor of Paulk, awarding $250 fees expended, and finding against the contention of Felder, and in favor of that of Paulk. Felder moved for a new trial upon the general grounds, and by an amendment added the following special grounds: (1) The plaintiff was permitted to testify as to the fees he had paid to his attorney for preparing and prosecuting this suit, over the objection of the defendant that this evidence was irrelevant, and that there were no facts on which he could base any recovery for attorney's fees. (2) Plaintiff introduced evidence tending to prove the value of the services rendered by his attorney in preparing and prosecuting this suit. Defendant moved to rule out this evidence, because there was no evidence

showing bad faith, or that the defendant had been stubbornly litigious. The court overruled this motion. (3) The verdict is without evidence to support it, because the plaintiff did not convey to the defendant all of the Paulk place and the Roberts house and lot. (4) The evidence discloses no equity in the petition, but a fraudulent and void contract made for the purpose of defeating Paulk's creditors in the bankruptcy proceedings. (5) The plaintiff's failure to convey to the defendant the property he agreed to convey, including the 250 acres of lot 394 and 15 acres of lot 367, and the Singletary tract of 185 acres, should preclude any recovery in this action. (6) The plaintiff did not come into equity with clean hands. (7) He is seeking to take advantage of his own wrong. (8) The verdict is contrary to the weight of evidence and without evidence to support it. (9) The finding of attorney's fees is contrary to law and the evidence, and without evidence to support it. The court overruled the motion, and the plaintiff excepted.

*A. H. Gray* and *H. A. Wilkinson,* for plaintiff in error.

*C. L. Glessner,* contra.