23927. METROPOLITAN LIFE INSURANCE COMPANY
*v.* LOVETT.

764

DECIDED FEBRUARY 8, 1935. REHEARING DENIED FEBRUARY 26, 1935.

*Jones, Johnston, Russell & Sparks,* for plaintiff in error.
*Hatcher & Hatcher, S. P. New,* contra.

JENKINS, P. J. ■ Under the rulings of the Supreme Court in *Cato* v. *Ætna Life Ins. Co.,* 164 *Ga.* 392 (2) (138 S. E. 787), reaffirmed in *Prudential Ins. Co.* v. *South,* 179 *Ga.* 653 (177 S. E. 499), the jury, under the evidence, were fully authorized to find that the plaintiff was totally and permanently disabled, within the meaning of the provision in the group policy upon which suit was brought, that "any employee shall be considered totally and permanently disabled who furnishes due proof to the company that, while insured thereunder and prior to his 60th birthday, he has become so disabled, as a result of bodily injury or disease, as to be prevented permanently from engaging in any occupation and performing any work for compensation or profit," and that "three months after receipt of such proof, the [insurer] will commence to pay such employee, in lieu of the payment of the insurance under said policy at his death, equal monthly installments" as further provided.

■ The verdict for total-disability benefits was not excessive, and the court did not err in charging the jury in effect that the amount of insurance applicable to the case was $2000 and not $1000, or in refusing to give the requested written instruction that it was $1000, upon the contention of the defendant insurance company that the plaintiff became permanently disabled, if at all, while the original certificate of insurance for $1000, issued November 16, 1929, was in force, and before the rider, increasing the insurance to $2000, issued on June 13, 1931, became effective. Under the undisputed evidence, the plaintiff developed the varicose veins, from which he suffered, first in one leg in 1930, and made a claim therefor to the defendant on April 23, 1931, prior to the issuance of the increased insurance, but he did not press his original claim, and in May or June, 1931, renewed his former occupation and duties as a house-to-house salesman, in which he continued to

work for nearly a year. Consequently, since the increased insurance became effective before this resumption of his work, and since, under the principles of the *South* and *Cato* cases, supra, he would not have been entitled to total-disability benefits for his condition prior to such resumption, his recovery for total disability must necessarily have been controlled by the amount of the increased insurance.

■ The jury found in favor of the plaintiff for past accrued payments under the $2000 policy of $36 a month from July 22, 1932, to October 26, 1933, the date of trial, a total of $580.80, and $500 attorney's fees, thus allowing 16 installments of $576 and apparently prorating a seventeenth installment on the basis of 2/15 of a month in the amount of $4.80 to cover the four days from October 22 to 26, 1933. Exception is taken on the grounds that, even if any recovery of installments could be legally had, it could not include monthly installments due after the filing of the suit to the trial (although the petition claimed such installments) ; that, under the above-quoted provision of the policy that payments would commence three months after receipt of "due proof" of total and permanent disability, only three installments would be due from the time thus provided to the time of filing suit; and that in no event was there any claim filed which could properly be construed as furnishing such proof before September 27, 1932, so as to make no payment due until three months thereafter, although it is further contended that no sufficient proof was furnished until October 3, 1932.

■ The verdict was not illegal or excessive because it included installments due under the amended policy between the time of filing suit and the time of trial, such installments being claimed in the petition. See U. S. *v.* Worley, 281 U. S. 339, 341 (50 Sup. Ct. 291, 74 L. ed. 887, 890). The right of the insured to recover these payments under a disability policy is not unlike that of a wrongfully discharged servant or agent to recover moneys due under the contract of employment under "the state of facts down to the time of trial." See *Roberts* v. *Rigden,* 81 *Ga.* 440-442 (7 S. E. 742) ; *Roberts* v. *Crowley,* 81 *Ga.* 429 (7 S. E. 740) ; *G., F. & A. Ry. Co.* v. *Parsons,* 12 *Ga. App.* 180 (2), 183 (76 S. E. 1063) ; *Realty Co.* v. *Ellis,* 4 *Ga. App.* 402 (61 S. E. 832).

■ The evidence supports the defendant's contention that there was no sufficient proof of total and permanent disability

furnished to it before September 27, 1932. The jury, however, were authorized to find that the letter from the plaintiff's attorneys, the "claim form" as filled out which it enclosed, with a certificate from the attending physician, constituted "due proof" under the insurance contract. Even if the contract had required "satisfactory proof" to be furnished, it would not have been necessary for the proof to "satisfy" the insurer, but it would have been "sufficient that reasonable proof be given of those matters specified or implied in the policy." *Life Ins. Co. of Va.* v. *Williams,* 48 *Ga. App.* 10 (2, 5), 23, 24 (172 S. E. 101). The instant certificate of insurance requiring only "due" proof, without defining or detailing the manner or nature of such proof, it was not necessary that it should have been in affidavit form. Taking the detailed earlier proofs of claim furnished in 1931, as to the disability of the plaintiff in one leg, the reference in the claim of September 27, 1932, to such earlier claim and disability, and the later correspondence of both parties referring thereto, the claim and the doctor's certificate furnished after both of the plaintiff's legs had become disabled from the same malady were reasonably sufficient to apprise the insurer of the nature and essential facts of the total disability claimed, notwithstanding further proof and more detailed information were not furnished until later dates. Since, however, there was no effort to submit to the defendant evidence of the condition of both legs, which for the first time could have caused total disability, before September 27, 1932, and the first payment was not due until three months thereafter, December 27, 1932, the installments due from that date to the date of trial, October 26, 1933, were only ten of $36 each, amounting to $360, instead of sixteen and the prorated part of a seventeenth as found in the verdict. Consequently, the recovery of all disability benefits over $360 was illegal and excessive, and the excess should be written off the judgment.

■ The court did not err in refusing a new trial upon the ground that the verdict for $500 attorney's fees, under the Civil Code, § 2549, was unauthorized. "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he can not, after litigation has begun, change his ground and put his conduct upon another and different consideration." *Cowdery* v. *Greenlee,* 126 *Ga.* 786, 789 (55 S. E. 919, 8 L. R. A. (N. S.)

137); *Tuggle* v. *Green*, 150 *Ga.* 361 (2), 370 (104 S. E. 85); *Cobb Lumber Co.* v. *Sunny South Grain Co.*, 36 *Ga. App.* 140 (2) (135 S. E. 759). The record shows that on April 10, 1933, the defendant company wrote a letter to the plaintiff's attorneys, stating that it had completed its investigation of the claim, and the medical evidence indicated his "ability to perform many kinds of work which would not require [his] standing on his feet for any great length of time," that "his activities as reported to us warrant the presumption his physical condition will permit the performance of work if obtainable," that "the disability clause operative under this policy clearly stipulates that benefits are payable only when a total and permanent disability has been established," and that "as no such medical evidence has been received in support of this claim, you will realize our inability to favorably consider it," and that "this letter is written without waiver of or prejudice to any other defense the company may have under this policy in the event of a suit." It also appears that before this letter was written, the defendant had before it other evidence from the plaintiff as to his condition, as testified at the trial, that on October 24, 1932, and March 15, 1933, it wrote to the plaintiff to go to the office of its own physician, that he was there examined by two of its physicians, and that one of these physicians, while making in his report the ambiguous statement as to the plaintiff's disability, "if not cured, of course permanent," and that the physician could not say as to the permanence, also stated that the "disease [was] almost intractable," described his condition as "both legs swollen" and "varicose ulcers of both legs," that plaintiff spent his time "mostly in house in chair or bed," and in reply to the question, "Is he wholly unable to engage in any work, occupation, or business suitable to one of his experience, training, or qualifications?" answered, *"Nothing that requires standing on feet."* The defendant was thus fully informed, before its letter denying the claim, and before it answered on May 1, 1933, the formal written demand of the plaintiff's attorneys of April 22, 1933, for $432 installments, and in its letter referred the attorneys to its previous letter of April 10, 1933, as to all the essential facts of the plaintiff's condition, or it had already had access to such facts with full opportunity of knowing them both from the evidence furnished by the plaintiff and from its own physicians. It knew the nature of the plaintiff's

occupation as a house-to-house salesman, which required the continual use of his legs. The fact, therefore, that it preferred to take the chances of litigation by refusing to pay the claim upon the only expressed grounds that the plaintiff was not permanently disabled and could perform other work not requiring "standing on his feet for any great length of time" would not absolve it, as a matter of law, from the penalty or attorney's fee chargeable against it under section 2549 of the Civil Code. "A failure on the part of the insured to recover the full amount claimed and sued for will not, after a denial of any liability whatsoever by the insurance company, preclude the insured from recovering against [it] such penalty or attorney's fees on account of any bad faith on the part of the insurance company in refusing to pay the loss." *Central Manufacturers Mutual Ins. Co.* v. *Graham,* 24 *Ga. App.* 199 (4) (99 S. E. 434). The fact that the plaintiff demanded only $432 benefits, recovered $580.80, and was entitled to recover only $360, does not justify the defendant's refusal to pay any amount of the claim or to tender the proper amount, where it based its refusal solely upon a denial of any liability whatever. "Bad faith," within the meaning of the Code, not being the equivalent of actual fraud, but being "any frivolous or unfounded refusal in law or in fact" to pay according to the insurance contract, after a demand, and the legal principles invoked by the insurer in its letter of refusal being contrary to the rulings in the *Calo* case, already adjudicated prior to its letter, the facts in evidence were sufficient for the jury to have found, as they did, that the defendant was liable for reasonable attorney's fees because of its "unfounded refusal in law or in fact to comply with the requisition of the policyholder." *Southern Surety Co.* v. *Fortson,* 46 *Ga. App.* 265 (4) (167 S. E. 335).

█ Although the award of a $500 attorney's fee to the plaintiff might seem large, it was authorized by the evidence of attorneys not connected with the case, which was admitted without exception. Where the amount of a verdict is attacked merely for excessiveness, and not for the inclusion of some calculable amount definitely ascertainable from the undisputed evidence, and the verdict has been approved by the trial court, it will not be set aside unless the amount is so excessive as to manifest undue bias or prejudice, gross mistake, or improper motive, on the part of the jury. See Civil Code, § 4399; *Dixie Mfg. Co.* v. *Ricks,* 30 *Ga. App.* 433 (5), 440 (118 S.

E. 452); *City of East Point* v. *Hendrix,* 27 *Ga. App.* 485 (3) (108 S. E. 623); *Realty Bond Co.* v. *Harley,* 19 *Ga. App.* 186 (2) (91 S. E. 254); *Merchants Trans. Co.* v. *Corcoran,* 4 *Ga. App.* 654 (7), 670 (62 S. E. 130); *Savannah Electric Co.* v. *Badenhoop,* 6 *Ga. App.* 371, 377 (65 S. E. 50); *So. Ry. Co.* v. *Wright,* 6 *Ga. App.* 172, 174 (64 S. E. 703). In view of the evidence of other attorneys, and the fact that the amount awarded under the evidence amounts to an adjudication not merely on what installments had already accrued, but on the total amount which would become due under the $2000 policy unless the physical condition and situation of the insured with regard to employment should change, the right to recover which total amount was determined by the verdict and judgment, this court can not set aside the attorney's fees as excessive. Only the excess of $220.80 in the disability benefits found for the plaintiff being illegal, the judgment must be affirmed, if the plaintiff, at or before the time the remittitur of this court is made the judgment of the trial court, will write off this amount from the verdict and judgment, otherwise the judgment is reversed.

*Judgment affirmed on condition. Stephens and Sutton, JJ., concur.*