29733. SAVANNAH & ATLANTA RAILWAY CO. *v.* DeBUSK.

DECIDED DECEMBER 4, 1942.

532

*Hitch, Morris & Harrison, Overstreet & Reddick,* for plaintiff in error. *John C. Hollingsworth,* contra.

STEPHENS, P. J. (After stating the foregoing facts.) 1. The judge should have stricken paragraph 5 (a, b) of the petition as amended, in which it was alleged that the defendant's servants in charge of maintaining the roadbed and railroad tracks of the defendant where the mules were killed "planted, or negligently permitted to grow on said track and roadbed a luxuriant growth of Bermuda grass, which offered much better grazing for said mules than the adjacent lands which were covered with broom sedge; said grass served as a lure to entice said mules to come upon said track and graze." While it is negligence on the part of the railroad company to leave upon its tracks or roadbed anything, such as soft mud, or grain, calculated to attract animals to the track, without taking reasonable precautions against any resulting injury to the animals from passing trains (52 C. J. 26), it does not appear from

the allegations of the petition as amended that the defendant, through its servants in charge of maintaining its roadbed and track where the mules were killed, was negligent because these servants planted Bermuda grass on the roadbed and tracks and permitted it to grow luxuriantly "which offered much better grazing for said mules than the adjacent lands which were covered with broom sedge," for the reason that such grass "served as a lure to entice said mules to come upon said track and graze." It was proper for the defendant to cause Bermuda grass to be planted along its roadbed and railroad tracks at this point. The roadbed where the mules were struck was on a dirt fill about ten feet high, and Bermuda grass and even briars growing there would tend to make the dirt fill more secure and to protect it from cave-ins and washouts, and even from settling to some extent, all of which tends to promote the safety of railroad travel by rendering the tracks and roadbed more stable.

2. The remaining portion of paragraph 5 was not subject to the demurrer. When animals are seen on, or in dangerous proximity to, a railroad track it is the duty of those in charge of the train to exercise ordinary care to avoid injuring them, taking into consideration the safety of the train, and those on board, and a failure to do so will render the company liable. What would amount to such care depends on the circumstances of the particular case, and those in charge of the train are only required to do what an ordinarily prudent and careful person would be expected to do under the circumstances. "Ordinary domestic animals may, in this State, generally, range upon the right of way of a railroad company or other unenclosed lands. They therefore can not be regarded as trespassers upon the track of a railroad company, and, relatively to the owner of live stock injured by a running train of the company, it is the duty of the company, through its delegated agents or employees, to keep a lookout ahead of the train, using ordinary and reasonable diligence to discover the stock upon the track and to avoid injury thereto." *Georgia Railroad & Banking Co.* v. *Churchill,* 113 *Ga.* 12 (38 S. E. 336). Therefore, those in charge of the train must keep a lookout for stock on or near the track, and if they fail to do so and animals are killed which could have been discovered in time to avoid the injury, the company will be liable, without regard to whether the animals were actually seen

or not. In this portion of paragraph 5 the plaintiff alleged that the servants of the defendant, who were operating the train as it approached the mules on the track, were careless and negligent and did not exercise ordinary care in keeping a lookout along the track; that if the defendant's servants had done this they would and could have seen these mules grazing on the track for a distance of 500 to 600 yards ahead of the engine; that these servants, in the exercise of ordinary care and diligence, could have then easily stopped the train and avoided killing the mules.

3. The court did not err in overruling the special demurrer to that portion of the petition setting up an offer of compromise by the defendant's agent, the acceptance thereof by the plaintiff, and the failure and refusal of the defendant to comply therewith, thereby causing the plaintiff to have to file suit for the purpose of seeking recovery of an additional sum as expenses of litigation caused by the conduct of the defendant. *Western & Atlantic R. Co.* v. *Smith,* 15 *Ga. App.* 289 (82 S. E. 906).

4. "Where it is shown that damage has been done to live stock by the running of a railroad train, a presumption of negligence arises against the company; but this presumption is subject to be rebutted and overcome by evidence; and where this has been done by the uncontradicted testimony of the employees of the company, a verdict finding against it is contrary to law and evidence. The testimony of employees of a railroad company, in the absence of anything to discredit or contradict it, can not be arbitrarily disregarded." *Georgia Railroad & Banking Co.* v. *Wall,* 80 *Ga.* 202 (7 S. E. 639). In that case, as in the case at bar, the live stock were found beside the railroad track after having been struck by the train that night. It appeared in the *Wall* case that the mules "seemed to have gotten on the track about 150 yards from where they were struck, and run that distance;" that "the track there was on an embankment six or eight feet above level ground, and was straight;" and that "there was a crossing near the place."

The plaintiff's evidence was that the mules had gotten on the defendant's track and were grazing; that when the train approached the mules ran down this track 200 or 300 yards ahead of the approaching train, and that the defendant's servants saw or should, in the exercise of ordinary care, have seen the mules running down the track ahead of the engine. There was a conflict in

the evidence as to the distance between where the mules got on the track and where the first mule was struck, and as to the distances between where the first mule was struck and where the second mule was struck and where the third mule was struck. The engineer and fireman both testified that they did everything possible to avoid hitting the mules, and that the mules suddenly loomed in front of the engine. The engineer testified that he saw the back of a mule or a cow; that he was keeping a lookout that night and was sitting where he was supposed to sit in driving the engine; that when he saw the animal he reached to put on the brakes; that it was so close in front of the engine he could just see its back, "I reckon 40 or 50 feet in front of the engine;" that the headlight beam was a little above the animal; that he put on the brakes and slowed as much as he could; and that he was running about 30 or 35 miles an hour; that the stock came up suddenly ahead of him and he did not have time to stop; that before he saw the animal he was driving the train in a proper and careful manner; that he was keeping a lookout; that he saw the animal as quick as he could and that he just saw the back of one object; that he did not know how many objects he met, and that he did not know when either mule was knocked off the track, as he only saw one animal's back; that what kept him from seeing the mules was that they came up so close on the left side; that it would have taken about 300 yards at that particular place that night to stop if he had applied the emergency brakes.

The fireman testified that he saw two of the mules; that he saw them a minute or two before the engine hit them; that when he saw them they jumped on the track; that the train did not run over 40 or 50 feet before it hit him; that he hollered to the engineer "look out;" that the engineer put the brakes on just as he hollered, and that he did not see the third mule; that the train continued to slow down to the curve, about a quarter of a mile from where the mules were hit; that the train seemed to be clear of the mules and the engineer pulled on off; that the train was running at a reasonable rate of speed, about 30 or 35 miles an hour, and that he was keeping a lookout on his side and saw these mules as soon as they came out of the bushes; that he and the engineer were not talking about anything at the time, but were sitting on their respective seat boxes in the cab of the engine looking down

the track ahead; that "you can not tell when you hit a mule, there is too much weight."

It appeared from the plaintiff's evidence that these mules were kept in the lot; that they were in the pasture that night, and that some one coming from church left the gate open and the mules got out. A witness for the plaintiff testified that it was about 500 or 600 yards from where the mules got out to where they were killed; that he heard about the mules being killed the next morning and went down to the railroad tracks to investigate; that the three mules were evidently struck and killed at certain distances apart. There was evidence that one of the mules had been dragged some distance.

If the evidence of the defendant's servants be true it was a physical impossibility to have protected the lives of the mules after they were seen. They testified that they were keeping a proper lookout, and that the mules were seen as quickly as possible for them to have been seen. In view of the uncontradicted testimony of the engineer and fireman, which showed that they exercised due diligence in maintaining a lookout for stock and that when the stock was seen the train could not be stopped in time to prevent striking them, a verdict against the defendant was wholly unauthorized. The testimony of the witness introduced by the plaintiff did not conflict with the testimony of the defendant's servants. The fact that the mules might have run down the track before being struck by the locomotive does not necessarily mean that they ran down the track this distance in front of the approaching engine and in view of the engineer and fireman. They could have been too far ahead of the engine for the headlight to shine on them, or they could have made these tracks in running down the roadbed before this train came along. "The legal presumption of negligence, upon which alone the plaintiff's case rested, was overcome by the testimony of three witnesses, which fully established due diligence on the part of the defendant. This testimony was practically uncontradicted, for the mere differences of opinion among the witnesses as to time, distances, the range of vision, etc., did not involve questions of credibility or produce conflict as to the actual facts of the occurrence." *Central of Georgia Railway Co.* v. *Waxelbaum,* 111 *Ga.* 812 (35 S. E. 645). See also *Macon & Birmingham Railroad Co.* v. *Revis,* 119 *Ga.* 332 (46 S. E. 418),

in which the court held that "relevant testimony in behalf of the company on the part of its servants can not, if they be unimpeached, arbitrarily be disregarded by court or jury, upon the assumption that it is not, in point of fact, in accord with the truth."

It follows that the verdict for the plaintiff was contrary to law and contrary to the evidence, and that the judge erred in overruling the defendant's motion for new trial.

5. The court did not err in admitting testimony of the plaintiff to the effect that the agent of the defendant had offered to settle the claim for the mules for $400; that he had been referred to this agent as one having authority to settle the claim, and that he had accepted such offer, but the defendant had failed to pay such compromise although the plaintiff had tried to effect such settlement several times. See Code § 20-1404; *Western & Atlantic R. Co.* v. *Smith,* 15 *Ga. App.* 289 (82 S. E. 906). The plaintiff had alleged these facts in seeking a recovery under the above Code section, and the special demurrer to this portion of the petition having been properly overruled, the plaintiff was entitled to introduce evidence in support thereof. Such evidence did not contradict Code § 38-408 to the effect that generally admissions or propositions made with a view to a compromise are not proper evidence.

However, the court erred in charging the jury on this issue. The evidence for the defendant to the effect that its agent, Bazemore, with whom the plaintiff alleged and testified he dealt relatively to the agreement for a compromise, did not have authority to effect a compromise of claims on behalf of the railroad, was not contradicted, and there was no evidence to support the charge of the court complained of.

6. The charge complained of in ground 3 to the effect that where the property of a person is injured or destroyed through the negligence of the servants of a railroad company by the running of its cars or engines such company shall be liable to pay damages therefor "notwithstanding any by-laws, rules or regulations, or notice which may be made, passed, or given by such company, limiting its liability," was not authorized under the pleadings and the evidence and should not have been given. There was no contention by the defendant that it was not liable to the plaintiff for the death of the mules because of any by-laws, rules, or regulations limiting its liability, but the defense was that it was not liable be-

cause the death of the mules could not have been avoided, and because its servants had exercised due care and diligence in the operation of the train.

The verdict for the plaintiff being contrary to law and unauthorized by the evidence, the court erred in overruling the motion for new trial.

*Judgment reversed. Sutton and Felton, JJ., concur.*

DECIDED DECEMBER 4, 1942.

*Hitch, Morris & Harrison, Overstreet & Reddick,* for plaintiff in error. *John C. Hollingsworth,* contra.