### 46897. BUFFALO CAB COMPANY v. WILLIAMS.

HALL, Presiding Judge. Defendant in an action for property damage appeals from the award of attorney's fees to the plaintiff.

Defendant's driver ran into the rear of plaintiff's automobile while she was stopped at a traffic light. An investigator from the defendant cab company came to the scene and told plaintiff they would fix her car. At the traffic court hearing (the driver entered a plea of guilty of following too close); she was again assured that they would fix her car. She called the cab company and was told to bring her car in for inspection. She took it in and left it for three days, during which time no one looked at it because they were "too busy." She then retrieved it and had it repaired at her own expense (and at the lowest estimate). She brought this suit to recover damages, alleging both the cost of repairs and diminution of value. She also alleged loss of hire for the repair period. The defendant answered with a simple denial and a demand for a jury trial. At this point, plaintiff amended her complaint to demand attorney's fees.

At the trial, defendant offered no evidence, nor did it at-

tempt to dispute liability for the collision or the amount of damages to the automobile. The defendant's main effort was directed to opposing the demand for attorney's fees. The court overruled defendant's motion for directed verdict on this issue. The jury returned a verdict for the cost of repairs ($345.34) and for attorney's fees ($160).

The sole ground of defendant's appeal is the propriety of the award of attorney's fees. *Code* § 20-1404 states, "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." The statute itself is venerable, and is a codification of the common law. The heyday of its construction and application seems to have occurred in the years surrounding the turn of the century.

Defendant cites many cases which state broadly that a refusal to pay without suit, regardless of motive, will not authorize the recovery of attorney's fees under any of the grounds of the statute. See *Pferdmenges, Preyer & Co. v. Butler, Stevens & Co.*, 117 Ga. 400 (43 SE 695); *Georgia R. & Bkg. Co. v. Gardner*, 118 Ga. 723 (45 SE 600); *Traders Ins. Co. v. Mann*, 118 Ga. 381 (45 SE 426).

The expansive language used by the court in these cases would seem to rest on the assumption that the controversies were genuine. The cases must also be read in the context of the era—when litigation was a more popular pastime. It was relatively inexpensive, speedy, and a source of local entertainment. The old casebooks are filled with minor disputes of no great legal significance. The only explanation for their appearance in the appellate courts is that the parties took genuine delight in litigiousness. Today it is difficult to take the position that the mere (although human) desire not to part with money, to satisfy a claim against which one has no defense, ought to be protected by a policy "not to require the defendant to pay the expense of obtaining a judgment against himself." *Traders Ins. Co. v. Mann*, supra, p. 386.

Considering the high cost of litigation, both to the parties and to the State, and the overburdened condition of our courts, the sane policy would be to discourage unwarranted litigation, whether caused by a plaintiff or a defendant.

Long before the cases cited by defendant, Justice Bleckley laid down a rule which is sound today: "The case is one fairly open to controversy in all its branches. The plaintiff commenced by insisting upon too high a standard both of liability and compensation. . . No man is bound to forego litigation at the expense of yielding rights apparently well founded, much less those which prove to be so founded in the end. Where there is a bona fide controversy for the tribunals to settle, and the parties cannot adjust it amicably, there should be no burdening of one with the counsel fees of the other, unless there has been wanton or excessive indulgence in litigation." *Tift v. Towns,* 63 Ga. 237, 242.

The key to the test is "bona fide controversy." Where none exists, then forcing a plaintiff to resort to the courts in order to collect is plainly causing him "unnecessary trouble and expense." This is in accord with a recent case in which this court upheld a denial of attorney's fees. Not only was the evidence in dispute, but the status of the underlying law was in doubt until resolved by the court. *D. H. Overmyer Co. v. Nelson-Brantley Glass Co.,* 119 Ga. App. 599 (168 SE2d 176).

The case here is the modern counterpart of *Western & A. R. Co. v. Smith.* 15 Ga. App. 289 (82 SE 906). The plaintiff's cow (value $50) was killed by defendant's train. Twice the railroad made an offer of settlement which the plaintiff accepted willingly. Then the railroad unaccountably decided not to pay but to "fight the case before all the courts before doing so." As a technique for avoiding the payment of small claims, the "so sue me" ploy is frequently effective. Occasionally, however, the bluff is called by an outraged plaintiff. The lady in *Western* amended her complaint, alleging that the railroad was

acting in that manner to cause her "all possible trouble and expense" and that she should be allowed an additional $10 as expenses of litigation. The Court of Appeals agreed with her.

The lady here just wanted her car fixed. She cooperated fully with defendant's suggested procedure for reaching a settlement but met with inaction. She has had to engage counsel to bring suit, to prosecute a jury trial and now to defend an appeal. If this court were to follow, unexamined, the sweeping rules of the *Pferdmenges* type cases, she would also be cast with the costs of the appeal (including a full transcript). We cannot pretend that her rightful victory below would be anything but Pyrrhic; nor can we ignore the effect on all other claims of this nature. Lawyers would have to advise clients that there is no *practical* way to collect a perfectly valid, technically undisputed claim if the other party simply decides not to pay. It will be very difficult to convince the public that this is the operation of a reasonable system of justice.

The proper application of *Code* § 20-1404 should reduce the possibility of that result. A defendant without a defense may still gamble on a person's unwillingness to go to the trouble and expense of a lawsuit; but there will be, as in any true gamble, a price to pay for losing. We do not believe the trial courts will find any difficulty in determining whether a genuine dispute exists—whether of law or fact, on liability or amount of damages, or on any comparable issue. Where none is found, it may authorize the jury to award the expenses of litigation.

We are not unmindful of decisions of both this court and the Supreme Court holding that attorney's fees are unauthorized where the amount of defendant's liability as established by the jury was substantially less than the amount sued for. See. *Broyles v. Johnson,* 103 Ga. App. 102 (118 SE2d 734). These decisions are inapposite for several reasons. First of all these cases are in contract while this case is in tort. *Traders Ins. Co. v. Mann,* 118

Ga. 381, supra. However, even if we were to apply these contract cases to the present tort case, the fact that the jury rejected the diminished market value and awarded cost of repairs ($55 difference) would not be considered substantial. Further it must be remembered that the defendant in its pleadings denied any liability whatever and at the trial offered no evidence to dispute liability or the amount of damages to the automobile.

Because the construction of the statute has been unclear, we cannot say this appeal was taken for delay only. Therefore the plaintiff's motion to assess ten percent additional damages must be denied.

*Judgment affirmed. Deen, Quillian, Clark and Stolz, JJ., concur. Evans, J., concurs specially. Bell, C. J., concurs in the judgment. Eberhardt, P. J., and Pannell, J., dissent.*

ARGUED FEBRUARY 1, 1972—DECIDED MAY 11, 1972—REHEARING DENIED JUNE 19, 1972—

*Michael J. Reily,* for appellant.

*John William Brent, E. Lee Redfern,* for appellee.

EVANS, Judge, concurring specially. I concur in the judgment, and generally with the majority opinion, but not with all that is said therein. I, therefore, concur specially and add the following:

*Code* § 20-1404 presents an exception whereby expenses of litigation may be allowed, although they "are not generally allowed." The exception is when it can be shown that defendant has acted in bad faith, or has been stubbornly litigious, or has caused plaintiff unnecessary trouble and expense.

In *Traders Ins. Co. v. Mann,* 118 Ga. 381, 384 (45 SE 426), it was explained that the tendency is to limit recovery of attorney's fees under this section to *ex delicto actions.* But *ex contractu actions* also may be included provided the defendant "has acted in bad faith" which means, in the transaction which gives rise to the cause of action, and not to the way and manner in which the defendant becomes

offensive and obstreperous after he has been hauled into court. See *Mendel v. Leader,* 136 Ga. 442 (71 SE 753); *Felder v. Paulk,* 165 Ga. 135 (6) (139 SE 873); *O'Neal v. Spivey,* 167 Ga. 176 (3) (145 SE 71); *B-X Corp. v. Jeter,* 210 Ga. 250 (78 SE2d 790); *Bankers Health &c. Ins. Co. v. Plumer,* 67 Ga. App. 720, 725 (21 SE2d 515).

Thus, it is more difficult to prove bad faith in ex contractu actions than in ex delicto actions. It is not too difficult to prove that a motorist, who drives his automobile into yours, while he is speeding and on the wrong side of the road, acts in bad faith. It was held long ago that damages in tort actions may be increased by expenses of litigation. See *Selma, R. &c. R. Co. v. Fleming,* 48 Ga. 514 (1); *Juchter v. Boehm, Bendheim & Co.,* 67 Ga. 534 (6).

The dissenting opinion suggests that a plaintiff, who sues for more than he recovers, should not be allowed attorney's fees. Why not? If A owes B, and A will not pay B one red cent, then it is necessary for B to employ an attorney in order to collect *anything* on his claim. When they get into the trial, and B recovers one-half of what he sues A for, should this be a justification for failure to allow attorney's fees? I say not, because B could not have recovered *anything* but for the services of an attorney, who must be paid by somebody.

It is quite correct, as asserted in the dissenting opinion, that there are decisions holding that if there is not a full recovery, attorney's fees should not be paid. Most of these, if not all, are insurance cases, under the bad faith statute. But there are cases holding to the contrary—holding that where defendant refuses to pay anything, and thereafter, only a part of the amount sued for is recovered, the defendant may still be subjected to payment of attorney's fees. And I submit that this line of cases is the more authoritative, and some of them are older, which brings the rule of stare decisis into play. Some of these decisions are: *Central Mfrs. Mut. Ins. Co. v. Graham,* 24 Ga. App. 199 (4) (99 SE 434); *Metropolitan Life Ins. Co. v. Lovett,* 50 Ga. App. 763 (4) (179 SE 253); *New York Life Ins. Co. v. Williamson,* 53

Ga. App. 28, 38 (184 SE 755); *Canal Ins. Co. v. Winge Bros.,* 97 Ga. App. 782, 786 (104 SE2d 525).

PANNELL, Judge, dissenting. I can agree with neither the result reached nor the reasons given therefor, which, in my opinion, disregard both the law applicable to the case and the facts as disclosed by the record.

The action here was to recover the sum of $400 decrease in market value of the plaintiff's automobile and loss of use for 10 days at $8.00 per day while the same was being repaired because of the negligence of the driver of defendant's taxicab, which caused damage thereto. After the defendant answered, denying the material allegations of the petition, the plaintiff amended her petition by adding a paragraph numbered 5, claiming attorney's fees and changing her prayer or demand for damages to include a recovery of $160 attorney's fees. The added paragraph reads: "The defendant has been *stubbornly litigious* and has *acted in bad faith* in refusing *to pay plaintiff her damages* and, by reason of such conduct on defendant's part, plaintiff is entitled to recover a reasonable attorney's fee to compensate her for the attorney's fee she will incur as a result of having had to resort to the court to force the defendant to honor her claim." (Emphasis supplied.) I am unable to find any allegation relating to the cost of repairing plaintiff's automobile. On the contrary, so far as appears from the record and transcript of evidence, the defendant knew nothing of the cost of repairs to the plaintiff's automobile until the facts came out upon the trial of the case.

The plaintiff testified as to how the collision occurred damaging the rear of her automobile. It was further proved that upon the trial of the case against the cab driver for following too closely, the cab driver pleaded guilty. He testified that the plaintiff stopped suddenly and he hit the rear of her automobile. The evidence was sufficient to authorize a verdict for the plaintiff on the question of negligence, but was not sufficient to authorize a finding that the cab driver's acts were wilful or wanton, or in any manner deliberate. The plaintiff gave the following testimony relative to

statements made to her by an investigator of the defendant cab company upon the trial of the traffic violation case: "Well, the investigator told me that Mr. Banks [the cab driver] couldn't make it, he had gone out of town, and he would fix my car, said Buffalo Cab would fix my car. This is what the investigator said. Because I had told the judge I didn't have no way to get to work, and Buffalo Cab would not come down and look at my car so they could fix it. And he said, 'We're not responsible for that,' but he said, 'We'll fix your car, but we're not goin' pay anyone to be carrying you backwards and forwards to work.'" She further testified: "Well, I called the cab company, called the office, and the man told me to take my car down there and they'd look at it. So I took my car down there, but no one wouldn't go and look at it. I called again the next day and asked them why wouldn't they go down there and look at my car. He said they was too busy, they didn't get a chance to go and look at it. So I called the next day, and they still said they was too busy. So after the third day I went down there and picked my car up and brought it back home, because I didn't have no way to get to work." There is no evidence that the defendant did have time to fix the plaintiff's automobile during the three days. The secretary-treasurer of the defendant testified and gave the following answers to the following questions: "Q. Do you have any knowledge of this collision or any dealings between Mrs. Williams and the cab company? A. I don't know anything about the collision at all. I might have talked to her on the phone. I don't really remember whether—I just—I was handling it. Q. Did you have any information that anyone did or did not tell her to go take her car to a place and they would be there to run an estimate on it and they would repair her car. A. This the normal procedure. This is what happens normally. We tell them to take the car and get an estimate if we feel we might be liable. But I don't remember in this case. I flat don't remember whether I talked to her. That's the normal way we do it, you see. Q. It would be quite normal that you told Mrs. Williams to take her car somewhere and you

would have someone to go down and look at the damage thereto? A. Quite possible, yes, sir. This is the normal procedure. Q. And it's possible it could have happened like she testified; that she went the first day, no one showed up; she called up the second day and no one showed up; she left it there the third day and no one still showed up, and she took it home? A. We only have one man. It's quite possible if he was busy. I'm not the only one that handles this, but it's possible he was tied up and couldn't get there. Q. So it's quite possible this unnecessary inconvenience was caused her? A. If our man was tied up and he couldn't get there, it's possible that she had to wait three days." Plaintiff further testified that the decrease in market value of her automobile, occasioned by the collision, was between $400 and $500 and that she had her car repaired at a cost of $345.34. Proof was made of the attorney's fees in the amount of $160. Because of lack of proper proof, the trial judge eliminated the loss of use claim of $8.00 per day. There is no cross appeal from this ruling. There was no proof that plaintiff made any demand on the defendant to pay the cost of repairing her automobile or that the defendant was even given the opportunity to do so prior to the day of trial. There was no evidence that the defendant ever refused to pay the cost of repairs. The trial judge overruled a motion of the defendant to direct a verdict as to the attorney's fees. The jury found for the plaintiff in the amount of $345.34 damages and $160 attorney's fees. The defendant appealed to this court enumerating as error the refusal of the trial court to direct a verdict as to attorney's fees, in charging the jury in reference thereto, and in making the verdict of the jury the judgment of the court on the theory that the jury's finding of less than the amount sued for as damages and a finding of attorney's fees were inconsistent.

The case of *Western & A. R. Co. v. Smith*, 15 Ga. App. 289 (82 SE 906) relied on by the majority (and followed in *Savannah & Atlanta R. Co. v. DeBusk*, 68 Ga. App. 529, 534 (23 SE2d 529)) related solely to the right of the plaintiff to plead refusal to carry out an agreement of settle-

ment, as entitling plaintiff to attorney's fees. In that case plaintiff failed to recover attorney's fees because of failure of proof. In the present case we are concerned, not with pleading, *but with proof.* Is the proof insufficient here? In my opinion it is, for two reasons: (a) There is no proof of an agreement to settle the controversy, and (b) assuming there was proof of an agreement to settle the controversy, there is no proof that the defendant failed or refused to carry out that settlement so as to authorize a finding that defendant was acting in bad faith or was stubbornly litigious, as charged in the plaintiff's petition.

(a) Construed most favorably to the verdict reached, the evidence shows an offer by defendant to fix plaintiff's automobile with a simultaneous refusal to pay anything for loss of use of the automobile. Plaintiff carried her automobile to the defendant for repairs and when defendant was too busy to start the repairs within three days, plaintiff got her automobile, had it repaired, made no demands on defendant to pay these charges, but instead filed suit, not for the repairs charged, but for a sum greater, representing the alleged decrease in market value, and further sought recovery for loss of use of the automobile, which defendant had expressly said it would not pay. These acts, in my opinion, cannot be held to prove that plaintiff accepted any offer to settle the controversy solely for the repairs of the automobile.

There is absolutely no evidence that plaintiff accepted the offer to fix her car as settlement of a claim for loss of market value and loss of use, for which she sued. The mere delivery of her automobile to the defendant to get it fixed would not constitute an acceptance of the fixing as complete payment of compensation for the injury suffered. There was no express testimony on her part that she ever so intended. If the defendant had fixed her automobile, could she not thereafter have sued the defendant for loss of use? That is what she did do here.

(b) However, should we concede or assume that the evidence here authorizes a finding that an agreement of settle-

ment was entered into to settle all damages sustained by the plaintiff, by the defendant fixing plaintiff's automobile, yet the evidence fails to show the defendant ever refused or failed to comply with this agreement. It shows only, and this is uncontradicted, that the defendant, with one man only to do the work, was too busy for a period of three days to do it. Yet the majority would penalize the defendant with attorney's fees for this delay, and this only. The plaintiff herself said she got her automobile after the three days because she needed it to go to work in. Even she does not claim that they had refused to comply with the agreement, nor does she so testify, but only that they failed for three days with a valid excuse. Does this constitute bad faith? Does this constitute stubborn litigiousness? Can we say that this evidence authorizes such a finding? The majority contend, however, that other elements must be considered, such as, (1) there was no actual controversy, (2) the defendant failed to introduce any evidence, and (3) the statute relating to attorney's fees needs a new construction because we're living in a new era. We will deal with these contentions in the order mentioned.

(1) The majority say "the lady here just wanted her car fixed." It appears, however, that after getting her car fixed she sought more, not only for damages to the car, but also sought recovery for loss of use. This latter element was always in controversy, and, as to this, the defendant received a directed verdict in its favor. Every element of recovery was in controversy, including the amount of damage to the automobile.

(2) The plaintiff, in proving its case, called the cab driver and defendant's secretary-treasurer for the purpose of cross examination, each of whom apparently told all they knew about the matter in question. Is the defendant to be charged with bad faith and stubborn litigiousness because it failed to examine them on direct examination? The majority says yes. The cases say no. "This interpretation is perhaps a misconstruction of some of the language of the *Mann* case [*Traders Ins. Co. v. Mann,* 118 Ga. 381 (45 SE

426)] with reference to the manner in which the suit is defended. Thus, the actions of a defendant in defending a suit will not authorize attorney's fees. As pointed out in the *Mann* case, supra, 'The language of section 3796 (*Code* § 20-1404) clearly points to bad faith *prior to the institution of the action* (italic ours), rather than to the motive with which the particular suit is being defended—*has* acted in bad faith, not—*is* acting.' In other words, the elements of bad faith which will authorize expenses of litigation in an . . . action are those acts relative to the conduct of entering into . . . the transaction and dealings out of which the cause of action arose (*Traders Ins. Co. v. Mann,* 118 Ga. 381, supra; *Sunbrand Supply Co. v. Garment &c. Corp.,* 99 Ga. App. 72 (107 SE2d 680); *Glover v. Bankers Health &c. Ins. Co.,* 30 Ga. App. 308 (117 SE 665)), but do not have reference to the motive with which the defendant defends an action after a cause of action has occurred. *Edwards v. Kellogg,* 121 Ga. 373 (49 SE 279)." *Edwards-Warren Tire Co. v. Coble,* 102 Ga. App. 106, 113 (115 SE2d 852).

(3) I do not think that the purported increase in the cost of litigation or that we are living in a new era, has anything to do with the construction of the statute or the application of facts to the law.

To say that a party must pay attorney's fees, when the party has succeeded in reducing part of the damages claimed and in getting a directed verdict as to another element of damage, is penalizing a party for refusing to be blackmailed into paying more damages than the law required. With this I cannot agree. The judgment should be reversed with direction that the attorney's fees be eliminated therefrom.

I am authorized to state that Presiding Judge Eberhardt concurs in this dissent.