### 64639. JORDAN BRIDGE COMPANY, INC. v. I. S. BAILEY, JR., INC.

DEEN, Presiding Judge.

I. S. Bailey, Jr., Inc. as plaintiff filed an action against the appellant for a balance of payments due on work it had subcontracted on contracts between appellant and the Georgia Department of Transportation in Burke and Bulloch-Screven Counties. The petition naming appellant and its president, Nick Jordan, as defendants, alleged that the work had been completed and accepted and that defendant owed $7,694.49 on the Burke County project and $15,103.87 on the Bulloch-Screven project. It also sought to have cancelled a loan deed put up by Bailey in lieu of a performance bond, and additional sums as a penalty for bad faith and expenses of litigation. From a judgment for the plaintiff entered by the court without a jury, Jordan Bridge Company appeals. A judgment in favor of the individual defendant is uncontested.

1. Appellant first takes issue with the court's statement in his final judgment that: "There is no dispute that defendant Jordan Bridge Company, Inc. owed plaintiff the sum of $22,798.36 at the completion of the two projects in question. The dispute focuses on the deductions from this figure made by defendant Jordan Bridge Company, Inc. and whether these deductions were justified." The appellee cites us to worksheets of the appellant concurred in by it in which these figures appear and we find sufficient evidence there and elsewhere in the record to justify the court in commencing with this sum and continuing to examine the claimed deductions, all but one of which (in the amount of $5,000) he disallowed. The resulting final judgment in the sum of $17,798.36 accordingly depends upon whether or not the remaining attempted deductions were justifiable.

2. Assuming all defenses urged by the appellant to have been justified there was still an admitted underpayment of $2,202.40 prior to trial. Bailey moved for summary judgment as to this amount and also for judgment cancelling the loan deed on property it had pledged at the inception of the undertaking. Defendant then voluntarily cancelled the loan deed and the court entered summary judgment for the uncontested $2,202.40. Both parties litigant agree that since the final judgment of the court also included this amount the award is duplicitous in part. As this is acceded to by all parties we will consider this sum as having been merged in the final judgment. We accordingly direct the trial court to amend his final judgment to include a statement to this effect, which will constitute an absolute defense against any effort at a future time to collect the $2,202.40

item twice.

3. Bailey, due to personal problems, entered into a subcontract with Eason Contracting Co. to finish its work on the Bulloch-Screven contract. Jordan concurred in this arrangement and its agreement, signed by all three parties, provided that Eason should "perform all remaining items and quantities of work . . . at the prices" in the Bailey subcontract. The items were listed. Eason "will relieve Bailey of the supervision which is in the Bailey contract, and will furnish supervision satisfactory to the engineers on all remaining road items" but "this agreement in no way relieves Bailey of the liabilities of his subcontract with [Jordan Bridge] and we are acting as an agent for Bailey to see that Eason Contracting Company is paid for work performed according to this agreement." Eason completed the work satisfactorily and was paid in full by Jordan Bridge. The payment, which is not contended to be erroneous, inures to Bailey's credit and precludes Jordan Bridge from collecting an item of $7,075.00 in supervisory backcharges against the plaintiff. The agreement above quoted controls over any statements which the defendant contends create an ambiguity either in the general "Plans and Specifications" or in the original contract between plaintiff and defendant.

4. Where, as held by the trial court, the gross amount owing from defendant to plaintiff was ascertained and the substantive dispute revolved around credits chargeable against this amount, the amount of the bill is a liquidated sum. *Haygood v. Smith,* 80 Ga. App. 461 (56 SE2d 310) (1949). Interest on such a sum is collectible from its due date. Bassett Furniture Industries of N. C. v. NVF Co., 576 F2d 1084 (1978); *Housing Auth. of Carrollton v. Ayers,* 211 Ga. 728 (88 SE2d 368) (1955).

5. Lastly, the appellant protests the award of attorney fees in the sum of $3,035.00. We agree. The damages which may be awarded under Code § 20-1404 for bad faith, for being stubbornly litigious, or for causing the opposite party unnecessary trouble and expense may not, in an *ex contractu* case, include a mere refusal to pay a debt, whether or not the justice of the debt is acknowledged. *Traders Ins. Co. v. Mann,* 118 Ga. 381, 385 (45 SE 426) (1903); *Brooks v. Steele,* 139 Ga. App. 496 (229 SE2d 3) (1976). The bad faith referred to in the code is not bad faith in refusing to pay but bad faith in the transaction out of which the cause of action arises. *Biltmore Const. Co. v. Tri-State Electrical Contractors,* 137 Ga. App. 504 (224 SE2d 487) (1976). "In actions on contracts, attorney fees under Code § 20-1404 may only be awarded where the contract was entered into in bad faith by the defendant in the first instance, or was procured by fraud and deceit." *Canal Ins. Co. v. Lawson,* 123 Ga. App. 376, 379 (181 SE2d 91) (1971). We are here dealing with a fully completed contract each item

of which is a liquidated amount. There is no question of bad faith in entering into either the contract between these litigants or the subcontract between Bailey and Eason in which Jordan Bridge concurred. It should, however, be noted, as stressed in *Edwards-Warren Tire Co. v. Coble,* 102 Ga. App. 106 (115 SE2d 852) (1960) that while bad faith does not have reference to a simple refusal to pay a debt "which results in requiring a party to employ counsel and institute legal action" (p. 112) or to the motive with which the defendant defends the action (p. 113) there may be bad faith in carrying out the provisions of the contract sufficient to support the award, and bad faith in a breach of contract *other than mere refusal to pay a just debt* may authorize the jury to award attorney fees, provided it is not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive (p. 115).

The appellee maintains such a situation obtains here. It rests this conclusion on the contention that Bailey in the first instance pledged Jordan Bridge certain property by a deed to secure debt and after the contracts were fully performed by it the defendant refused to cancel the deed unless the plaintiff would accede to the set-offs urged. As we have seen above, all the set-offs were eventually disallowed except one for $5,000. Additionally, an amount for $2,202.40 was admitted owing but not tendered. After the motion for summary judgment was made defendant voluntarily cancelled the loan deed and this tardy action is urged as evidence of bad faith under the holdings in *Felder v. Paulk,* 165 Ga. 135 (139 SE 873) (1927) and *Mendel v. Leader,* 136 Ga. 442 (71 SE 753) (1911). Mendel charged that the defendant had acted in bad faith in fraudulently making a contract of sale; performance of a covenant at a time not fixed therein depended on extrinsic facts, and the issue of the original bad faith was held to be a jury question. In *Felder* the defendant was found to have fraudulently taken an assignment of a note from the plaintiff when his obligation was to have it cancelled of record. In the present case the defendant refused cancellation of the loan deed until a final settlement with the plaintiff of several charges which he claimed as set-offs.

The original contract between the parties had specified that an already existing loan deed from plaintiff to defendant also constituted security for the faithful performance of the contract and to save the Jordan Bridge harmless from any default by Bailey. Since Jordan Bridge contended that Bailey had in fact defaulted by not personally superintending the sub-subcontracted work and that this cost the defendant several thousand dollars, " 'bona fide controversy' " (see *Franchise Enterprises v. Ridgeway,* 157 Ga. App. 458 (2) (278 SE2d 33) (1981)) existed at least to this item. In view of this plus the

fact that another of the set-off items in the sum of $5,000 was owed by the plaintiff, we cannot say that this action represented a bad faith breach of the contract *other than* a mere refusal to pay.

We accordingly direct that the sum representing attorney fees be stricken and that the judgment be further amended to state that it includes the sum of $2,202.40 previously awarded by summary judgment.

*Judgment reversed in part and affirmed in part with direction. Sognier and Pope, JJ., concur.*

DECIDED OCTOBER 7, 1982 —
REHEARING DENIED OCTOBER 22, 1982.

*Jeffrey C. Hamling,* for appellant.
*Carlisle & Newton, John T. Newton, John R. Carlisle,* for appellee.