## MACON & WESTERN RAILROAD COMPANY *vs.* LESTER.

1. A verdict will not be set aside where, in a conflict of evidence, the weight of it is with the verdict.
2. Loose stock are not trespassers on unenclosed lands in this State.

Case, from Bibb County. Tried before Judge LAMAR, November Term, 1859.

Rodolphus Lester brought an action on the case to recover of the plaintiff in error damages for a horse alleged to have been run over and killed by the cars of said Company, on the Macon & Western Railroad.

On the trial, plaintiff, Lester, introduced William H. Berry, who testified : That he was standing and looking at the train on the 19th day of December, 1855, between 8 and 9 o'clock ; was in a house some fifty or sixty feet from the road ; was looking at the light in front of the engine : saw the light half a mile distant ; the cars were coming towards witness on a down grade ; there was nothing to obstruct the view ; saw a beast on the road ; saw it run some fifty yards after first seeing it, when it passed out of witness' sight ; saw it after it was killed ; it was left on the crossing ; no effort to stop the train until it struck the crossing ; it ran some four or five hundred yards before it stopped after passing the crossing. The horse was struck some forty or fifty feet above the crossing, and was carried some fifty yards by the cars ; the train was running about twenty miles per hour ; the horse was loose, without anything on him ; did not leave the track until he was knocked down ; witness does not know how far the train was from him when he first saw the horse ; saw the horse by the light of the lamp in front of the engine ; not more than a minute or a minute and a half from the time he saw the horse until he disappeared ; the crossing was not a public crossing, but was built by Mr. Van Valkenburg by the consent of the Railroad Company. Most of the neighbors west of the railroad used it as a crossing ; the animal referred to was a small dark bay mare ; the whistle was not blown till after the mare was struck and the train had reached the crossing.

William H. Cason testified for plaintiff: That he saw the animal next morning after it was killed; it was the property of Rodolphus Lester; knew her well, and was worth $200 00; witness had put it in witness' lot; the fence was a good one, but the mare broke out; it was a bright, moonlight night, the moon near its full; the mare went on the railroad at the crossing, and then up it 440 yards; it then turned and walked back some distance, then trotted, and then ran; ran some 200 yards before it was struck; it ran so fast as to leap three or four cross-ties at a time; it was struck thirty yards above the crossing; the crossing was used as a public one; Van Valkenburgh's steam mill is near it, and Ralston's mill is reached by it; it is some three miles from Macon, and much used by the public, witness not present at the accident; saw it the morning after; the railroad where the accident happened is straight some eight or nine hundred yards; there was no obstruction; the road was on an embankment from four to twelve feet high and down grade.

Warren Riley testified: That he examined the road with Cason—and the balance of his testimony is in substance the same as Mr. Cason's as to the description of the road, the movements of the horse, etc.

William Berry, recalled, testified: That he was a fireman on the railroad; a car going on an up grade cannot be stopped under from 50 to 200 yards; on a down grade, not under from 100 to 300 yards; running down grade, it could not have been, if all the appliances were used, in fifty yards; from the tracks the mare made, she was not running at full speed; such a horse as this would run a mile in three minutes when at full speed.

. The plaintiff having here closed, the defendant proved by John Nott: That he was engineer on defendant's train at the time specified when a horse was run over and killed by the train; was rather behind time; the engine was running at usual speed; the accident occurred at about 30 minutes past 8 o'clock, P. M.; the train had approached within about forty feet of the horse before deponent saw him, and was struck down in a moment, and witness could not have stopped the train before the accident; the horse was loose and running on the track when he saw it; there was no carelessness on witness' part, nor of any of the conductors or officers of the train; the accident could not have been

avoided; all was done that could have been done under the circumstances; notwithstanding the time was so short between the time of his seeing the horse and the collision, deponent reversed the engine, and did all he could to prevent the accident; the engine had hooks in front, on which the horse was caught and dragged about 100 yards before the train could be stopped; on a clear night the head-light would cast its light 100 to 150 yards in front of the engine; but on a foggy night it could not cast it so far; and the reason why the horse was not sooner seen was that it leaped on the track about 40 feet from the train, and had not been seen by witness previous to that; directly ahead of the train the head-light will be thrown so that an object the size of a man can be seen at the distance of 100 yards, but not from the side of the track.

The evidence having closed, the Court charged the jury : That the question for their determination was, whether the defendant was guilty of the want of ordinary care. If he was, then he was liable for the value of the horse and interest; farther, that if both parties were equally guilty or equally innocent, then the defendant was not liable; that the crossing on the railroad not being a public highway, the company were not obliged to erect blow posts; and the fact that the horse was killed near the crossing had nothing to do with the liability of the defendant. Yet, the defendant, if he knew that the crossing was used very frequently, was bound to have his engine under such control as to be able to stop it if there should be any person or thing on the road.

The jury found for the plaintiff a verdict for $260 00; whereupon, counsel for defendant moved a rule for a new trial on the ground, that the jury found contrary to evidence, without evidence, and strongly against the weight of evidence; and, also, because the jury found contrary to law, and the justice of the case, and against the charge of the Court.

The rule was refused by the Court, and counsel for defendant excepted.


COLE, for plaintiff in error.

SPEER & HUNTER, *contra.*

*By the Court*—STEPHENS, J., delivering the opinion.

1. If the engineer's version of this case be the true one, it was an unavoidable accident; but if the version of the other three witness is to be taken, it was a case of gross negligence, not to say of wanton outrage. The sum of their testimony is, that the horse ran before the engine, gradually increasing his speed, about 400 yards before he was struck, in a bright moonlight night, and in the full blaze of the head-light, and yet that there was no slackening in the speed of the engine. These facts are suggestive of a *race* after the horse, and much more than suggestive of an utter indifference as to his fate. We cannot set aside a verdict which is so well supported by three witnesses who do not appear to have been otherwise than impartial, because it is contradicted by one witness whose connection with the affair laid him open to a fair suspicion of bias.

2. But it was said, whatever may have been the negligence of the engineer, the owner of the horse was in *pari delictu,* in allowing his horse to go at large; that he, through his horse, was a trespasser on the road. Such law as this would require a revolution in our people's habits of thought and action. A man could not walk across his neighbor's unenclosed land, nor allow his horse or his hog, or his cow, to range in the woods nor to graze on the old fields, or the " wire grass," without subjecting himself to damages for a trespass. Our whole people, with their present habits, would be converted into a set of trespassers. We do not think that such is the law. Where a whole country abounds in loose stock, he who wishes to protect his land from their visits, must enclose it; and where, as in our State, a form of fence is prescribed, he must enclose it with a lawful fence. Every man consents to what is universal in the country where he is, until he expresses his dissent in a form to give notice of it to the public, and where there is a mode prescribed he must pursue that mode.

Judgment affirmed.