THE GEORGIA RAIL ROAD AND BANKING COMPANY, plaintiff in error, *vs.* JOSEPH S. ANDERSON, defendant in error.

1. To charge a railroad with the damage resulting from the killing of stock on the track, by the running of the cars, it is incumbent on the owner to show, affirmatively, that such killing resulted from the gross neglect, mismanagement, or the carelessness of the road or its employees.
2. When, in an adjustment by the commissioners, of the damages to the land by the running of the Georgia Railroad over the same, the owner claims and receives, by the award of such commissioners, additional compensation for building and keeping up a fence on the line of such road, as it runs through his land, for the purpose of protecting stock, etc., and the stock of such owner subsequently escapes over such fence from his enclosures, on to the track, and is there killed by the running of the cars: *Held*, that the proceedings and award giving such compensation, is admissible as evidence for the road in a suit brought by the owner to recover damages, etc.

Motion for new trial.   From Newton county.   Tried before Judge FLOYD.   At the March Term, 1861.

The facts are incorporated in the opinion of the Court.

CLARK & LAMAR, for plaintiff in error.

GLASS, for defendant in error.

*By the Court*—LYON, J., delivering the opinion.

This was a suit by the plaintiff, Joseph S. Anderson, against the Georgia Railroad and Banking Company, for the recovery of damages for two mules that were knocked down, run over and killed by the passenger train on the railroad of defendants.   The plaintiff was the owner of the land on both sides of the railroad track at the point where the mules were killed.   The mules killed were in a field of the plaintiff, on the evening and night when they were killed, adjoining the railroad, but fenced off from the road by a fence of the plaintiff, that had been a good fence, but, at the time of the acci-

The Georgia R. R. and Banking Company *vs.* Anderson.

dent, was somewhat dilapidated, out of repair, and, in several places, quite low. Opposite to each end of the field, on the railroad, were stock gaps, and fences from the stock gaps to the fence of the plaintiff, and opposite the fence the track was in a cut of some eight or ten feet in depth. The mules had got out of the field, and on to the track, during the night, and as the passenger train came up from Augusta, in the night, it ran over and killed the mules. It appeared, from their tracks, that they had ran along the track some fifty or sixty yards, before the train overtook and killed them. The overseer said that he heard the whistle of the engine blow two or three times, and thought the train stopped at the point where the mules were killed. The engineer running the train when the mules were killed, says that there was a curve in the track at that point; that the night, at the time of the accident, (about $10\frac{1}{2}$ o'clock,) was misty and foggy; that he had on head-lights, but that the fog settled on the glass so that he could not see well; that he first saw the mules about twenty-five or thirty yards ahead of him; that they were then off the track, but when he blew on the breaks they jumped on to the track; that he did all he could to stop, by reversing the engine and putting on the breaks, but, being down grade, it was impossible to stop; that it was his duty to see the lamps cleaned at each end of the road; had wiped off the mist at Social Circle, a point on the road below; that the mist would collect on the glass in running three or four miles; could not stop to wipe off mist, and make schedule time. If there had been no fog or smoke, he might have seen the mules two hundred yards, that night; will not say that he could have seen them more than one hundred yards; could not have seen the mules that night two hundred yards. One witness thought it was a moonlight night; the next day was a clear and bright day. One witness says that a mule could be seen along the railroad track, in the day-time, some four hundred and twenty yards, and from where they started could have been seen more than five hundred yards. We suppose he meant from the direction the cars came, though the brief does not so state. Verdict for plaintiff, and motion

for new trial on various grounds, among others, that the verdict was against law and the evidence, and motion refused.

If the testimony of the engineer is true, there was a case of unavoidable accident, and for which no recovery can be had. If it is not true, and it be excluded, on that account, from the consideration of the jury, then there is no proof before the jury of the circumstances attending the killing of the mules, and the plaintiff fails to make out his case. To charge the railroad with the loss of these mules, it is incumbent on the plaintiff to show affirmatively that the killing resulted from the gross neglect, mismanagement or carelessness of the employees of the road. That the mules were killed by the running of the cars, there is no doubt; that is clear; but under what circumstances? They were running on their own property, and the mules were trespassing—had no business there. In all such cases, the onus is on the plaintiff to show that the road was in fault. Mitchell vs. The Western and Atlantic Railroad Company, 30th Georgia Reports, 22; The Macon and Western Railroad, vs. McConnell, 31st Georgia Reports, 133. There is not one thing in the record showing the road to be in fault, from which a liability might be incurred. For this reason, we think the Court below erred in not granting a new trial, on the ground that the verdict was against law and the evidence. It is unnecessary to notice the charge of the Court, and refusal to charge as requested, as the view we have stated meets the whole of them. Of course, if the charge does not correspond to the view we have stated, it will be erroneous.

During the progress of the trial, the defendant offered in evidence an award made by commissioners, in favor of Joseph S. Anderson, the plaintiff, against the Georgia Railroad and Banking Company, on the 24th day of August, 1844, relative to a difference then pending between said parties, in respect to the right of way of the Georgia Railroad over and upon the land of the plaintiff, and of the damages and injuries resulting therefrom to the plaintiff, by which it appeared that the sum of two hundred and thirteen dollars were allowed

by said commissioners for the land of plaintiff occupied as
right of way, to wit. .....................................$213 00
For additional fencing required in course of the con-
struction of said railroad............,................... 118 50
For depreciation in value of the remainder of the
land................................./................~........... 200 00
Incurring repairs of fence included, etc................ 143 00
                                                            _____
                                                            $674 50
Less advantages accruing from road, etc...............  50 00
                                                            _____
                                                            $624 50

This award was rejected by the Court, and in this we think
there was error.  For if it be true that by this proceeding
the plaintiff compelled the defendant to pay him for the
building of these fences along the road, and for keeping them
up, it would require a very strong and unequivocal case to
charge the road with losses sustained by him by reason of
stock escaping over such fence, and then being injured on the
track from the running of the trains.

Let the judgment be reversed.

Judge LUMPKIN, being a stockholder in the Georgia Rail-
road and Banking Company, did not preside in this case.