43265.  TENNESSEE, ALABAMA & GEORGIA RAILWAY
COMPANY v. ANDREWS.

ARGUED JANUARY 3, 1968—DECIDED JANUARY 31, 1968.

*F. H. Boney*, for appellant.

*Brown & Clements, Burton Brown*, for appellee.

EBERHARDT, Judge.  This case was filed and all judgments excepted to were entered prior to the effective date of the Civil Practice Act; consequently its provisions have no application, and insofar as any rule of trial practice or procedure may be involved, we must apply the law as it stood at the time the judgments were entered.  *Grizzard v. Grizzard*, 224 Ga. 42, 43; *Abercrombie v. Ledbetter-Johnson Co.*, 116 Ga. App. 376, 378 (157 SE2d 493).  That Act, of course, made no change in the body of applicable substantive law.

1.  The general demurrer raises the question of whether the Act of 1953 (Ga. L. 1953, p. 380), as amended by the Act of

1955 (Ga. L. 1955, p. 633), requiring that uniformly and throughout the state[1] owners of livestock shall not permit them to run at large on or stray upon the public roads or on any property not belonging to the owner of the livestock unless by permission of the property owner (*Code Ann.* §§ 62-1601, 62-1604), has changed the rule as to the duty owing by a railroad in the operation of its trains to animals straying upon its right of way.

At common law every owner of livestock was required to keep them off the land of others, and if they were permitted to stray thereon the animals were trespassers. But in the early days of this country it became the general custom to allow cattle, horses, hogs and the like to roam and range at large on the *unenclosed* lands of the neighborhood in which they were kept, making them quasi commons. This was due to the great value of the unenclosed lands as pasturage for these animals, and to the scarcity and high cost of fencing. Consequently, the common law rule was rejected and it was held either that the roaming animals were not trespassers, or that if they were, the owner of the unenclosed land impliedly consented to the trespass. 4 AmJur2d 302, Animals, § 49.

The general rule then adopted was that the owner of lands should fence his crops to protect them from the roaming livestock. "Where a whole country abounds in loose stock, he who wishes to protect his land from their visits, must enclose it." *Macon & Western R. Co. v. Lester*, 30 Ga. 911, 914. Thus the unenclosed lands were for the most part woodlands, uncultivated and unimproved lands. Conditions in this State were within this description and the common law rule was rejected in *Macon & Western R. Co. v. Lester*, supra, the court holding that "Loose stock are not trespassers on unenclosed lands in this State." Hn. 2. This, however, was limited to situations in which the owner of the lands on which the animal might

---

[1] A new and changed public policy is expressed in § 1 of the Act of 1955 (Ga. L. 1955, pp. 633, 634): "There is hereby found and declared a necessity for a state-wide livestock law embracing all public roads in the State of Georgia and all other property, and it is hereby found and declared that it is necessary that the application of such law be uniform throughout the state."

stray was held liable for doing harm to it by some *active* negligence. If the negligence were passive only, such as putting out poison to kill or inhibit the growth of undesired vegetation, the animal straying on the land and suffering injury from eating the poisoned vegetation was held to be a trespasser, and the landowner could be held only for wilfully and wantonly injuring it. *McKenzie v. Powell*, 68 Ga. App. 285 (22 SE2d 735). Cf. *Atlantic C. L. R. Co. v. O'Neal*, 180 Ga. 153 (178 SE 451).

With the growth of the country came the railroads and their rights of way running through the unenclosed lands. For various reasons loose stock were often on the right of way and many were injured. The General Assembly felt that there should be some protection to the owners of these animals, and Acts were adopted in 1847, 1850 and 1855 providing for arbitration of questions of liability and damages. See a discussion of these in *Macon & Western R. Co. v. Davis*, 13 Ga. 68, and *Georgia R. & Bkg. Co. v. Anderson*, 33 Ga. 110. These Acts were forerunners of what became § 2978 in the Code of 1861: "A railroad company shall be liable for any damage to persons, stock, or other property by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." This section appeared, unchanged, as § 2321 in the Code of 1895, § 3033 in the Code of 1882, and § 2780 in the Code of 1910. In 1929 it was held to be unconstitutional in Western & Atlantic R. v. Henderson, 279 U. S. 639 (49 SC 445, 73 LE 884), and has not since appeared in the Code.

However, to meet the ruling of the Henderson case, the General Assembly of 1929 adopted what now appears as *Code* §§ 94-1108, 18-607 and 68-710, making proof of injury prima facie evidence of a want of reasonable care and skill on the part of the servants of the company who may have operated the offending train.

In the meantime growth in the population was causing a radical change in the conditions which had brought about the

"open range" and the rejection of the common law rule as to straying animals. Beginning in 1872 the General Assembly made provision whereby the residents of a militia district, or of a county, might petition the ordinary to call an election and allow them to vote on the question of whether owners of livestock must refrain from allowing them to roam beyond the owner's lands, and making the stray animals subject to being impounded, or whether the owners of cultivated lands must continue to fence their crops to protect against the straying animals. See Chapter 62 of the Code of 1933, where the several Acts, together with prior Acts defining a lawful fence, were collected.

Soon after 1872 the more populous centers began to call elections, and from time to time a militia district or a county voted itself as a "no-fence" area—that is to say, an area in which no fence for the crops was to be required. Instead, owners of livestock were compelled to fence them.

As this occurred the railroads began to urge upon the courts, in suits brought against them for the injury or killing of livestock by trains, that since owners were required to fence the cattle and the railroad was relieved of any necessity for fencing its right of way, loose stock straying upon the right of way in a "no-fence" area were trespassers, so that the railroad could be held only for a wilful or wanton injury inflicted. Apparently, since the number of the "no-fence" areas was then small and the open range areas were great in size, the courts felt that a uniform rule should be maintained throughout the State. In any event, at that time the Code section imposing liability for injury to livestock from the operation of the trains had not been altered or stricken down by the U. S. Supreme Court. This section made ordinary care the standard in all situations, thus negating the possibility of an inconsistent holding that the straying animal was a trespasser to which a lesser standard of care was owed. That the continuation of a rejection of the common law rule as to trespassing animals was planted squarely upon this Code section is made clear by Chief Justice Bleckley in *Central R. Co. v. Summerford*, 87 Ga. 626, 629 (13 SE 588), where it was declared that "This rule of diligence was not modi-

fied or altered by subsequent legislation known as the stock law. *Central R. R. v. Hamilton,* 71 Ga. 461. With or without the stock law, the degree of diligence required of railroad companies is one and the same; it is 'ordinary and reasonable.' "

Continued reliance on the Code section imposing liability on railroads was the status when it was declared to be unconstitutional by the Supreme Court of the United States in Western & Atlantic R. v. Henderson, 279 U. S. 639, supra, after which it was no longer viable.

The legislation adopted to meet this ruling is substantially different from that which had been declared unconstitutional. The Act of 1929 is nothing more than a rule shifting the burden of the evidence once it appears that the injury was done by the running of a train, and even so, it has been held many times that not only does the burden shift, but it shifts back as soon as the defendant railroad introduces some evidence tending to show that its employees in charge of the train were in the exercise of due care and diligence. *Seaboard A.-L. R. Co. v. Fountain,* 173 Ga. 593 (2b) (160 SE 789); *Ga. Power Co. v. Braswell,* 48 Ga. App. 654, 657 (3) (173 SE 763); *Parrish v. Southwestern R. Co.,* 57 Ga. App. 847 (1) (197 SE 66); *Macon, Dublin & Savannah R. Co. v. Stephens,* 66 Ga. App. 636 (19 SE2d 32); *Savannah & Atlanta R. Co. v. DeBusk,* 68 Ga. App. 529 (23 SE2d 529); *Atlantic C. L. R. Co. v. Martin,* 79 Ga. App. 194 (53 SE2d 176); *Atlantic C. L. R. Co. v. Clemmons,* 87 Ga. App. 177 (73 SE2d 210).

In *Western & A. R. v. Gray,* 172 Ga. 286 (12) (157 SE 482) it was held that this Act "is but a rule of evidence." It does not impose any standard of care on the railroad, recognizing that in different situations different standards apply.

The 1953 and 1955 Acts abolishing the open range and requiring that uniformly over the State the owners of livestock must fence them or take the necessary steps to prevent them from straying to the roads and the lands of others, provided: "No owner shall permit livestock to run at large on or stray upon the public roads of this State, or any property not belonging to the owner of the livestock unless by permission of the owner of such property." *Code Ann.* § 62-1604.

That placed us back where we were at common law, for the reason, as pointed out in 2 AmJur 773, Animals, § 110: "Since the earlier decisions, which in many states abrogate the common-law rule . . . there has occurred, with the rapid development of the various commonwealths by increase of population and extension of agriculture, such a marked change in the physical and social conditions and habits of the people that the reasons for the rejection of the common-law rule have disappeared, and instead a necessity for its adoption has clearly arisen. As a result many states have, by legislative enactments prohibiting owners from permitting their cattle or other animals to roam at large, and by making owners responsible for any damages resulting from their failure to restrain their animals, practically restored to its full strength and power the old common-law principle."

When the open range was abolished our population had increased many fold. Substituted for the horse and buggy and the mule and wagon in transportation were the automobile and truck on paved highways, and crops were being cultivated with tractors. Range cattle had virtually disappeared, giving way to the pure bred herds which grazed on permanent pastures. Going with the abolition of the open range was the implied consent of the landowner to the invasion of his lands by trespassing livestock, and correspondingly we recognized that the owner of trespassing cattle may incur liability for their injury to person or property of another. *Porier v. Spivey*, 97 Ga. App. 209 (102 SE2d 706); *Law v. Hulsey*, 109 Ga. App. 379 (136 SE2d 161).

It is wholly illogical to say that the animal is a trespasser only if it causes damage; rather, as was held in *McKenzie v. Powell*, 68 Ga. App. 285, 286 (22 SE2d 735), "Where the cattle are not allowed to roam at large, he who suffers his cattle to go at large takes upon himself the risk incident to it. Posey v. Md. & Pa. R. R. Co., 16 Pa. Dist. & Co. Rep. 169. In other words, the risk here involved was on the plaintiff, unless the cattle were injured by wilful and wanton negligence."

Restoration of the common law rule has a further virtue. It lowers the standard of care owed by the railroad to trespassing

calves to the level of that owed to trespassing children who may have reached an age of discretion, or to adults. To examine the gross inconsistency heretofore existing, see *Central R. v. Brinson,* 70 Ga. 207, where the rule is laid down that the railroad is liable only for wilful and wanton negligence in the infliction of fatal injuries to a 15-year-old boy who was a trespasser, walking along its right of way. And compare *Central R. & Bkg. Co. v. Rylee,* 87 Ga. 491 (13 SE 584, 13 LRA 634) where the trespassing child was only nine years old. Are the lives of calves more precious than those of children, so that we must hold that calves walking on the right of way are not trespassers and that the railroad owes to them the higher duty of ordinary care? Surely in our development of a modern society we have come further than that!

We have found no instance where a ruling has been invoked as to the effect of the Acts of 1953 and 1955 in restoring the common law rule. It is an open question. Since we have had, following the invalidation of the Code section imposing liability and a standard of care by Western & Atlantic R. v. Henderson, 279 U. S. 639, supra, only a rule for the shifting of the burden of going forward with the evidence, which does not stand in the way of recognizing a restoration of the common law rule; so we conclude that this has been the effect of the abolition of the open range. There is now uniformity as to that throughout the State; our society has made a 180 degree turn from the conditions which brought about rejection of the rule. We have gone from a policy of requiring people to fence crops to keep the cattle out to one of requiring owners of cattle to fence them and keep them off lands of others. Reason for rejection of the common law rule no longer can be justified.

How stands this petition as measured by the common law rule? A reading of the petition discloses that it rests upon simple negligence only. There are no allegations of wilful and wanton negligence or of facts from which its inference could be demanded. Where the plaintiff must recover, if at all, because of wilful and wanton negligence, he must plead it. "If the pleaded facts authorized an inference merely that the negligence amounted to ordinary or simple negligence, it would not

be good as against demurrer. . . Even if the petition alleged ordinary or simple negligence, it was subject to general demurrer; for this is a lesser degree of negligence than the law requires in cases of recovery by a licensee. . ." *Leach v. Inman,* 63 Ga. App. 790, 793, 794 (12 SE2d 103). And compare *Townsend v. Minge,* 44 Ga. App. 453 (2) (161 SE 661); *Bivins v. Tucker,* 41 Ga. App. 771 (3), 774 (154 SE 820); *Capers v. Martin,* 54 Ga. App. 555 (5) (188 SE 465).

The general demurrer should have been sustained.

We do not reach the matter of whether the court erred in refusing to direct a verdict and thereafter in denying a judgment notwithstanding the verdict.

*Judgment reversed. Felton, C. J., and Whitman, J., concur.*