45367.   LOUISVILLE & NASHVILLE RAILROAD
COMPANY v. MORELAND et al.

SUBMITTED JUNE 1, 1970—DECIDED NOVEMBER 18, 1970.

*Mitchell & Mitchell, D. W. Mitchell, Jr.,* for appellant.

*Adams & Adams, Isaac C. Adams, Robert B. Adams,* for appellee.

QUILLIAN, Judge. ■ (a) The defendant argues in this court that the trial judge should have granted its motion for new trial and motion for judgment notwithstanding the verdict because there was no evidence of wilful and wanton negligence on the part of the defendant's agents.

Formerly, even where the stock law, popularly known as the "no fence" law, was applicable, the degree of negligence of a railroad was not changed from ordinary negligence to wilful and wanton negligence. *Aycock v. Callaway,* 78 Ga. App. 219 (1) (51 SE2d 53); *Atlantic C. L. R. Co. v. Scott,* 95 Ga. App. 70 (2) (97 SE2d 325). However, "since the abolition of the open range in this State by adoption of the Act of 1955 (Ga. L. 1955, p. 633), amending the Act of 1953 (Ga. L. 1953, p. 380), loose livestock going upon the lands of others, including a railroad right of way, are trespassers, and the duty owed them by the landowner or railroad company is

not wilfully or wantonly to injure them." *Tennessee, Ala. &c. R. Co. v. Andrews,* 117 Ga. App. 164 (159 SE2d 460). We therefore apply that test to the facts in the case sub judice.

Georgia has not previously applied a wilful and wanton test to livestock killed on a track or right of way. However, before dogs were included in the classification of "livestock" it was necessary to show wanton and wilful conduct on the part of a railroad in order to recover for the death of or injuries to a dog. *Seaboard A. L. R. v. McDonald,* 19 Ga. App. 627, 628 (91 SE 1053); *Powell v. Nelson,* 52 Ga. App. 351, 353 (183 SE 348). Under such rule, the failure to sound any alarm or reduce speed where a dog was seen upon the track has been found sufficient to authorize a jury finding that a killing was wanton or intentional. *Southern R. Co. v. Keel,* 7 Ga. App. 244 (66 SE 627); *Seaboard A. L. R. v. Parrish,* 16 Ga. App. 254 (85 SE 200); *Louisville & N. R. Co. v. Harris,* 19 Ga. App. 502 (91 SE 928); *Ga. Northern R. Co. v. Winchester,* 19 Ga. App. 539 (91 SE 929). "Ordinarily, the only duty owing to a trespasser is not to wantonly or wilfully injure him, but a failure to exercise ordinary care to prevent an injury to a trespasser after his peril has become apparent may amount to wantonness." *Burden, Smith & Co. v. McMillan,* 35 Ga. App. 639 (1) (134 SE 189). See *Powell v. Nelson,* 52 Ga. App. 351, supra.

The members of the train crew testified that they saw the cattle at some distance, near Holly Creek bridge, that the whistle was sounded and they rang the bell; that the speed of the train was reduced and emergency brakes applied. The engineer stated that he did not immediately apply the emergency brake when he first saw the cows since only one was on the track, that the brakes were applied "in emergency" when the cows began converging on the track; that if the emergency brake had been applied when he first saw the cows, the train would not have stopped short of hitting them. An eyewitness for the plaintiff testified that he heard the whistle blowing, saw the train and the cattle all on the track at the bridge, that "the cattle was going around and around and wouldn't come off the bank that was on each side"; that the speed of the train did not change from the time he saw it until it hit the cattle; that he had heard the train before and "you can always hear the motor check whenever it's not pulling"; that this time

he did not hear the motors "check"; that "the motors sounded like they were pulling all the time."

Thus, although the facts were sharply in dispute there was evidence from which the jury might have determined that the train's speed was not reduced. We are cited the rule in *Pollard v. Todd,* 62 Ga. App. 251, 257 (8 SE2d 566): "Even where a person on the track is in fact discovered, it is the general rule that a railway company is authorized to act on the presumption that a person apparently of full age and capacity, standing or walking along or near its track, will leave it in time to save himself, unless it should also appear that such trespasser is in an apparently incapacitated or helpless condition, so that he could not reasonably be expected to extricate himself from his peril." There is no showing that this rule has ever been applied to livestock. As set out in 44 AmJur 826, Railroads, § 572: "There is no presumption that an animal will step from the track in time to avoid injury, as in the case of a human being." "The engineer may not assume that animals will exhibit the same intelligence as persons in responding to such warning signals. Checking the speed of the train will not of itself relieve the railroad from liability for injuries to animals, which might have been avoided by the exercise of reasonable care in taking other omitted precautions." 74 CJS 1200, Railroads, § 607. For the Georgia rule under the former law, see *Atlantic C. L. R. Co. v. Walker,* 89 Ga. App. 605 (80 SE2d 508).

We see no reason to apply a Procrustean rule that would permit the operators of a train to absolutely presume that livestock will remove themselves from a position of peril on the track. Especially is this true, where a showing was made that because of the grade of the fill or embankment, the cattle could not leave the tracksite. See 74 CJS 1200, Railroads, § 607.

We therefore apply the general and sound principles which are an inherent part of the law of this State. "Whether certain conduct amounts to wantonness is a jury question if reasonable minds might disagree as to whether or not it is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit of actual intent." *Insurance Co. of N. A. v. Gulf Oil Corp.,* 106 Ga. App. 382 (5) (127 SE2d 43). See *Bales v. Wright,* 59 Ga. App. 191 (200 SE 192); *Arrington v. Trammell,* 83 Ga. App.

107 (62 SE2d 451); *Sammons v. Webb,* 86 Ga. App. 382, 393 (71 SE2d 832).

The determination as to what constituted wilful and wanton negligence and whether the employees of the railroad exercised the proper degree of care after discovering the cattle's peril was for the jury.

(b) It is urged that the evidence showed that the plaintiff failed to exercise ordinary care in keeping his livestock properly enclosed.

"When the defendant's wrongful act was not only a failure in diligence but was wilful or so grossly negligent as to be wanton and reckless, the mere failure of the plaintiff or his servant in the exercise of ordinary care will not defeat a recovery." *Carr v. John J. Woodside Storage Co.,* 217 Ga. 438 (1) (123 SE2d 261). But, assuming that the plaintiff's lack of ordinary care could be shown, we cannot hold as a matter of law that plaintiff was so negligent as to preclude him from recovery. That too was a jury question. *Holland v. Watson,* 118 Ga. App. 468, 472 (164 SE2d 343).

"The mere fact that livestock is running at large permits an inference that the owner is negligent in permitting the livestock to stray; but when the owner introduces evidence that he has exercised ordinary care in the maintenance of the stock, that permissible inference disappears." *Green v. Heard Milling Co.,* 119 Ga. App. 116 (166 SE2d 408).

The evidence showed that the pasture gate was left unlocked but not left open. The plaintiff stated that: he expected the gate to be used and had unlocked the padlock on the gate; it was otherwise securely latched; a cow could not open it, but it was found open. The plaintiff also related that he regularly inspected the pasture fence and made repairs as necessary.

The evidence adduced would authorize a finding that the owner had exercised ordinary care in maintenance of his stock. *Porier v. Spivey,* 97 Ga. App. 209, 211 (102 SE2d 706); *Green v. Heard Milling Co.,* 119 Ga. App. 116, supra.

The evidence was sufficient to support the verdict.

■ Defendant complains of failure to give his written request to charge to the effect that one may assume a trespasser will get off a track. We have already indicated that such rule of law would

not necessarily be controlling in a case of this nature.

Here on the trial the defendant made no objection as to why the failure to charge was error. "Under Section 17 of the Appellate Practice Act of 1965 as amended by Section 9 of the Act of 1968 (Ga. L. 1965, pp. 18, 31; Ga. L. 1968, pp. 1072, 1078; *Code Ann.* § 70-207) it is necessary that an appellant make proper objection to a charge as given or to a request refused and state the grounds therefor before the jury returns its verdict. The mere exception to a failure to give a numbered request to charge fails to meet this requirement." *Reeves v. Morgan,* 121 Ga. App. 481 (8) (174 SE2d 460) (reversed on other grounds, *Morgan v. Reeves,* 226 Ga. 698 (177 SE2d 68)). See *U. S. Security Warehouse v. Tasty Sandwich Co.,* 115 Ga. App. 764 (1) (156 SE2d 392).

3. It is urged that the trial judge erred in refusing to admit testimony and photographs concerning the condition of plaintiff's fence on May 15, 1970, some 41 days after the livestock were killed.

When photographs are sought to be introduced into evidence there should be testimony that the facts appearing therein are a true likeness of the same scene at the time of the occurrence in question. *Draffin v. Massey,* 93 Ga. App. 329, 334 (92 SE2d 38). See *Seaboard C. L. R. Co. v. Clark,* 122 Ga. App. 237, 240 (176 SE2d 596). The admission or exclusion of photographs is a matter within the discretion of the trial judge and will not be controlled unless abused. *Grasham v. Southern R. Co.,* 111 Ga. App. 158, 161 (141 SE2d 189).

Since there was nothing to indicate that the fence was in a state of disrepair when the cattle were struck the exclusion of the photographs, and testimony relating thereto, was not error.

*Judgment affirmed. Bell, C. J., and Whitman, J., concur.*