## A03A0891. COTTON et al. v. THE STATE.
(589 SE2d 610)

BARNES, Judge.

Thomas and Gloria Cotton appeal from their joint conviction for allowing livestock to roam at large and Thomas Cotton also appeals his conviction for cruelty to animals. The Cottons were convicted following a bench trial in the Elbert County State Court.

Contending the evidence was not sufficient to support their convictions and that the trial court erred by sentencing them pursuant to OCGA § 4-3-3, the Cottons assert several enumerations of error. Although we find the evidence sufficient to sustain Thomas Cotton's conviction for cruelty to animals, we also find that the trial court erred by finding both Cottons guilty of violating OCGA § 4-3-3 for allowing their cattle to run at large. Therefore, we must reverse those convictions.

Viewed in the light most favorable to the verdict, the record shows that on April 2, 2001, Deputy Dye of the Elbert County Sheriff's Office investigated a report that cattle were without drinking water. She observed "several cattle and calves in . . . a small closed-in area without any water." They also had no feed in the pen. The ribs on some of the cattle were standing out. When she released the cattle from the pen, they ran to a nearby mud puddle to drink water before drinking again from a pond in the back of a larger pasture. Deputy Dye testified that the animals appeared to be suffering because they had no food or water and there was no grass for them to eat in the muddy pen in which they were located.

A livestock inspector with the Georgia Department of Agriculture testified that, after receiving a complaint about starving cows, he went to the site with Deputy Dye. When he arrived, he found very thin cows enclosed in a pen without any water. This witness also believed the cows were in poor physical condition and suffering. When Deputy Dye released them from the pen, they frantically rushed to the water.

According to a neighbor, the Cottons came to the property on a very regular basis to care for the cows when they first leased it in 1999. Over time, however, they came less frequently. This neighbor once noticed between ten and fourteen days between visits. This neighbor also testified that there was a three- to five-day gap in visits around the time the deputy and agriculture inspector came and released the cows.

In its ruling, the trial court questioned the Cottons' credibility and found them both guilty of the livestock running at large charge. The trial court noted that "one of the things that concerned me about this case in listening to the testimony — and this kind of goes to sentencing — is this was kind of a blame thing. . . . Well, the blame

game is over for them. Now it's time for us to accept some responsibility for the actions or lack of action, I should say, the omissions here that weren't done." The trial court also found Mr. Cotton guilty of the cruelty to animals charge because "there was unjustifiable omission on his part in not making sure these cows had water. And it was clear that they were suffering."

1. Mr. Cotton's first four enumerations of error all assert, in essence, that the evidence was insufficient to support his conviction for cruelty to animals. OCGA § 16-12-4 (b) provides that "[a] person commits the offense of cruelty to animals when he or she causes [the] death or unjustifiable physical pain or suffering to any animal by an act, an omission, or willful neglect." "Willful neglect" is defined as "the intentional withholding of food and water required by an animal to prevent starvation or dehydration." OCGA § 16-12-4 (a) (3). Cotton asserts that his conviction cannot stand because the State failed to prove and the trial court failed to find that he "intentionally" withheld food and water as required by the 2000 amendments to this Code section that inserted the word "willful" before neglect and provided a definition of "willful neglect" for the first time.

We find no merit in these contentions. "Willful neglect" is but one of three ways in which a person can commit the offense of cruelty to animals because OCGA § 16-12-4 (b) refers to "an act, an omission, *or* willful neglect." (Emphasis supplied.) See *Gearinger v. Lee,* 266 Ga. 167, 169 (2) (465 SE2d 440) (1996) ("The natural meaning of 'or,' where used as a connective, is to mark an alternative and present choice, implying an election to do one of two things.") (citation and punctuation omitted). Thus, an "intentional withholding" on the part of Cotton was not the only way for the State to prove the offense. The offense can also be proved by an "act" or an "omission" that caused "unjustifiable physical pain or suffering to any animal." OCGA § 16-12-4 (b). In our opinions interpreting the language "an act, an omission, or neglect" predating the 2000 amendment, we held that malice and intent are not elements of the offense of cruelty to animals. See *Cox v. State,* 216 Ga. App. 86 (453 SE2d 471) (1995); *Miller v. State,* 179 Ga. App. 217 (345 SE2d 909) (1986). These holdings are still valid with regard to the "act" and "omission" portions of OCGA § 16-12-4 (b).

The evidence at trial was sufficient to prove cruelty to animals under the standard set forth in *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Stephens v. State,* 247 Ga. App. 719, 720-721 (545 SE2d 325) (2001). The evidence shows that Cotton was responsible for the care of the cows, that he lived over 100 miles away, that the cows were not cared for on a regular basis, that the cows were confined in a very small pen, that there was no water in their pen on the day the deputy and agriculture inspector released

them from the pen, that they were thin and desperate for water, and that they suffered from a lack of water.

2. The Cottons also assert that their animal running at large conviction must be reversed because the trial court found them guilty of the civil statute relating to livestock running at large, OCGA § 4-3-3,[1] and this statute does not impose criminal liability. The record shows that both Cottons were charged by uniform traffic citations with the offense of "Livestock running at Large in Violation of Code Section 4-3-3 of State Law." At the conclusion of the bench trial, the trial court found as follows: "As to the issue of 4-3-3, allowing animals — livestock running at large, it's my finding that I find Ms. Cotton and Mr. Cotton guilty of a violation of 4-3-3." The Cottons contend that they could not be convicted of violating OCGA § 4-3-3 because it is not a criminal statute and that allowing livestock to run at large is punished under OCGA § 4-3-12.[2]

OCGA § 4-3-3 was enacted as part of the act declaring a uniform state-wide livestock law for all of the public roads and other property in the state of Georgia and ending the free ranging of cattle. OCGA § 4-3-1. See *Tennessee, Alabama &c. R. Co. v. Andrews*, 117 Ga. App. 164 (159 SE2d 460) (1968). The effect of the law now codified as OCGA § 4-3-3 was to place the burden on cattle owners to prevent the cattle from roaming onto the property of others and on public roads. Id. at 169. The Code section is not a penal statute. *Porier v. Spivey*, 97 Ga. App. 209, 211 (1) (102 SE2d 706) (1958). Therefore, the Cottons cannot be convicted of and punished for violating it. OCGA § 16-1-4: "No conduct constitutes a crime unless it is described as a crime in this title or in another statute of this state." Thus, the conduct the trial court found the Cottons guilty of is not a crime, and their convictions must be reversed and sentences must be set aside.

Reversing the convictions on this ground raises the question of what direction should be issued on the disposition of these charges. We note that, even though the cruelty to animal charge against Mr. Cotton was brought by accusation, the charges concerning the livestock running loose were brought against the Cottons in state court by UTCs. No accusations concerning these offenses are in the record.

---

[1] "No owner shall permit livestock to run at large on or to stray upon the public roads of this state or any property not belonging to the owner of the livestock, except by permission of the owner of such property."

[2] Any owner of livestock who intentionally or knowingly permits the same to run at large or stray upon the public roads of this state or any property not belonging to the owner of the livestock unless by permission of the owner of such property, or any person who shall release livestock, after being impounded, without authority of the impounder, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by imprisonment in the county jail not exceeding six months, or by fine not exceeding $500.00, or by both fine and imprisonment.

Consequently, even though not enumerated as error, we must address whether the state court had jurisdiction to try these charges. "The judgment of a court having no jurisdiction of the person or subject matter, or void for any other cause, is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it." OCGA § 17-9-4.

Trials in state court based on UTCs are authorized only for misdemeanor cases arising out of violations of certain traffic laws, OCGA § 17-7-71 (b), and allowing livestock to run at large is not one of the violations authorized. Therefore, UTCs may not be used to prosecute these offenses. *State v. Rustin*, 208 Ga. App. 431, 435 (430 SE2d 765) (1993). As a consequence, the State court had no jurisdiction to try the offenses brought by UTC. See also *Bush v. State*, 273 Ga. 861, 862 (548 SE2d 302) (2001) (city court did not have jurisdiction over misdemeanor offense that was not traffic-related). "When a trial court enters a judgment where it does not have jurisdiction, such judgment is a mere nullity; but an appeal from such an illegal judgment will not be dismissed but instead, the void judgment will be reversed." (Citation and punctuation omitted.) *Weatherbed v. State*, 271 Ga. 736, 738 (524 SE2d 452) (1999). Nevertheless, jeopardy did not attach in these cases. "A defendant is placed in jeopardy when, in a court of competent jurisdiction with a sufficient indictment, he has been arraigned, has pled and a jury has been impaneled and sworn." (Citations and punctuation omitted.) *Turner v. State*, 152 Ga. App. 354, 355 (1) (262 SE2d 618) (1979). The point may be moot, however, as it appears that the statute of limitation may have run on these offenses without an accusation being filed. See *State v. Rustin*, supra, 208 Ga. App. at 435.

Accordingly, the convictions are reversed and the trial court is directed to dismiss these charges.

3. As the Cottons' remaining enumerations of error concern the running at large convictions which we have set aside in Division 2, they are moot and need not be addressed.

*Judgments affirmed in part and reversed in part with direction. Andrews, P. J., and Adams, J., concur.*

DECIDED OCTOBER 30, 2003 — ■

*James S. Grimes*, for appellants.
*Gary L. Aston, Solicitor-General*, for appellee.