SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

Aubrey Lee PRICE, et al., Defendants.

Civil Action No. 1:12–cv–2296–TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed June 9, 2010.

Madison Graham Loomis, W. Shawn Murnahan, Securities & Exchange Commission, Atlanta, GA, for Plaintiff.

## ORDER

TIMOTHY C. BATTEN SR., District Judge.

On March 31, 2015, the Court entered an order granting summary judgment in favor of Intervenor–Plaintiffs Household Life Insurance Company and Protective Life Insurance Company.[1] The Court con-

---

1. The Court will not recite the full procedural and factual background of this case, which is available in its numerous prior orders. It is sufficient for today's purposes to explain that shortly after the presumed death of Defendant Aubrey Lee Price, Household and Protective paid life insurance policy proceeds to the receiver of Price's estate. Protective paid the receiver $251,510.32, and Household paid

cluded that the insurers were entitled to reimbursement of certain life insurance proceeds paid out to Aubrey Lee Price's estate in early 2013. As a further result of that order, however, the Court granted Melanie Damian, the receiver for Price's estate, fourteen days to file a claim to those proceeds she might contend were expended in good faith prior to Price's discovery. On April 14, the receiver submitted a claim of entitlement, seeking to retain $327,448.78 in funds from the Household proceeds and $151,513.17 in funds from the Protective proceeds. That claim is now before the Court.[2]

## I. The Receiver's Claim to Policy Proceeds

Following Price's presumed death, a number of insurers made timely payments to the receiver of the proceeds of his multiple life insurance policies. On March 11, 2013, the receiver deposited $543,561.64 in proceeds from Household. And on July 9, the receiver deposited $251,510.32 in proceeds from Protective.[3] The funds were deposited into the primary receivership account and were not segregated or otherwise separately identifiable with respect to other funds in the account. The receiver rightly notes that she was not required or directed to segregate any of those funds and that commingling of the estate's assets

was not improper. Thus, as the receiver has explained, it has been virtually impossible to directly trace the insurance proceeds into and out of the receivership account.

For that reason, Damian proposes the following method for identifying funds to which she has a valid claim: the Court should assume that the insurance proceeds were expended during the time period between receipt and Price's discovery on a proportionate basis with other funds in the receivership account. The receiver proposes allocating the estate's expenses to each insurer based on its pro rata share of the funds available to her during that time. In so doing, she argues that not only should the Court allocate expenses actually expended prior to Price's discovery, but also those amounts incurred or "earmarked" for disbursement during the relevant period. Using that method, the receiver makes the following calculations:

Between March 11 and December 31, 2013, the receivership estate had $1,271,170.80 in cash available from funds other than the insurance proceeds.[4] Adding the proceeds from the insurers, according to the receiver the total cash available during the relevant time period was $2,066,242.77. The receiver then calculated the percentage of those funds repre-

---

$543,561.64. When Price was later discovered alive, having faked his own death, the insurers intervened in this action, seeking repayment of those proceeds.

**2.** Also before the Court is the insurers' motion for prejudgment interest [285].

**3.** In her claim, the receiver also references a July 23 deposit of $191.78 from Protective. This is the first mention of such a payment. This amount was not previously disclosed to the Court in Protective's complaint in intervention [122], was not raised or disputed at summary judgment [241, 251], and is not included in any of the parties' claim calculations. The Court will therefore disregard this

alleged second payment and will proceed with the understanding that the disputed proceed payments from Protective total $251,510.32.

**4.** The receiver curiously excludes from this figure $480,000 of funds that were in the receiver's account as cash assets during the relevant period. Despite the fact that this amount was later disbursed to Genworth Life Insurance Company in December 2014 as part of a settlement agreement between those parties, the Court does not agree that these funds should be excluded. The Court will address below the implication of these additional funds on the proper calculations.

sented by the insurers' contributions. Household's $543,561.64 represents 26.31% of the total funds; Protective's $251,702.10 represents 12.18% of the total funds. During this same time period, the receiver states that the estate incurred expenses totaling $1,244,732.21. This figure includes all expenses submitted to the Court during the relevant time period, including fees incurred and approved by the Court from November 1 through December 31, 2013, but not disbursed until early 2014, as well as the twenty percent of the fees the Court has ordered held back until the conclusion of the receivership, *see* [90, 104, 117, 278].

Therefore, 26.31% of the total expenses is $327,448.78 (attributable to Household), and 12.17% of the total expenses is $151,513.17 (attributable to Protective). By subtracting those amounts from the total insurance proceeds paid, the receiver calculates that Household is entitled to the return of $216,112.86, and Protective is entitled to the return of $99,997.15.

## II. Insurers' Objections

■ The insurers oppose the receiver's claim, objecting to both her proposed method of calculation, and the actual amounts claimed. The insurers argue that because proceeds were not kept segregated and identifiable, and because her proposed computation method is not limited to funds "exclusively attributable" to the insurers, the receiver is not entitled to retain *any* portion of the funds.[5] The Court is not persuaded, however, that the receiver's maintenance of a general, commingled account was inappropriate, that her method-

ology is unsuitable, or that inaccuracies in her proposed calculations are anything more than computational errors. As such, the Court will deny the insurers' request to deprive the receiver of the entirety of her claims.

In the alternative, the insurers propose a different method of calculation based on an understandable but mistakenly narrow interpretation of the Court's order granting summary judgment. The insurers contend that, under the language of the order, the receiver is entitled to retain only those funds that were specifically and solely attributable to the insurers and which were actually disbursed, not merely incurred, prior to Price's discovery.[6] On this theory, the insurers reviewed the receiver's expenses during the relevant period, identified the precise expenses related exclusively to matters pertaining to the insurers, and calculated only expenses actually disbursed. The insurers arrived at $15,282.00, which they argue should simply be split pro rata between them. The Court disagrees with this narrow interpretation, and to the extent it was the Court's own language that led to this misunderstanding, the Court will now clarify its view on the subject.

■ As the Court explained in detail at summary judgment, it is principles of equity and unjust enrichment that allow the insurers to recover funds they mistakenly paid under the insurance contracts. Likewise, however, equity and good conscience provide that any restitution to which they are entitled may be diminished where the receiver, as payee, materially

---

5. The insurers also argue that because the receiver has not complied with the precise language of the Court's order and has "ignored relevant facts," she should be barred from any equitable relief.

6. The order stated as follows: "Having determined that the insurers' claims extend no

further than those proceeds that were segregated and identifiable at the time it became clear that the insurers raised a legitimate claim to them, the receiver is granted fourteen days to file a claim to the funds that she argues were attributable to the insurers and were disbursed prior to Price's discovery and arrest." [281] at 48.

changed positions in reliance on those payments. *Allcity Ins. Co. v. Bankers Trust Co. of Albany,* 80 Misc.2d 899, 364 N.Y.S.2d 791 (1975); *Grier v. Huston,* 1822 WL 1937 (Pa.1822) (where administrator of estate received money by mistake and was sued for repayment, he was entitled to equitable defense that he administered the money in payment of decedent's debts without notice of the mistake); *In re Harned's Estate,* 149 Misc. 476, 267 N.Y.S. 769 (1933) (administrator of estate innocently received and then distributed funds later determined to have been paid in error; claimants were only entitled to refund of amounts remaining after deduction of distributions and expenses).[7] It is therefore equity that permits the receiver to retain a certain portion of the funds she received from the insurance company. To prevent unfair disgorgement of funds to which the receiver properly presumed entitlement in 2013, the Court is prepared to allow the receiver to retain that portion of the funds that were spent in good faith and in reliance on the insurance proceeds. The Court is therefore willing to consider all reasonable expenses incurred during the relevant period, not simply those attributable exclusively to matters concerning the insurers. And the Court will adopt the receiver's proposed method of calculation to ascertain the expenses chargeable to the insurers between the date of payment and the date of Price's discovery. This includes all expenses incurred regardless of whether they were disbursed prior to Price's discovery. On that score, the insurers contend that if the receiver's proposed method of calculation is to be adopted, significant alterations should be made. The Court agrees.

The insurers are correct in pointing out a number of miscalculations in the receiver's proposed plan of disbursement. First, despite the fact that Household made its payment to the receiver in March 2013 and Protective made its payment in July of that year, in making her calculations, the receiver inexplicably assumes that both were deposited in March 2013. Thus, she considers the relevant period to be March to December 2013. As to Protective, this is clearly incorrect. Household will be charged its pro rata share of expenses from March 11 to December 31, while Protective will be charged its pro rata share of expenses from July 9 to December 31.

Next, it is unclear why the receiver chose to simply ignore the presence during the relevant period of a portion of the funds she received from Genworth Financial, totaling $480,000.[8] Those funds were part of the receivership estate beginning January 2013; the receiver acted in reliance on them; and they were not disbursed until December 2014, nearly a year after Price was discovered alive. They should not be excluded from the estate for the purposes of the Court's computation of total receivership assets during the relevant period. The amount of cash available

---

**7.** An executor or administrator has the duty of administering his decedent's personal estate by paying debts, claims, and charges and by turning the balance over to legatees or distributees. If a payment is made by mistake to an executor or an administrator who supposes that he is entitled to it as a part of the estate, and he administers and thereby disposes of all or part of it before he is informed of the mistake, and he cannot readily secure a refund, there is a change of position which operates as a total or partial defense to the action to recover the payment from him.
40 A.L.R.2d 997 § 4 (1955).

**8.** On January 29, 2013, Genworth paid the receiver death benefits totaling $1,038,414.48. Genworth later filed suit to recover those benefits, and that claim was settled in 2014. In December 2014, pursuant to the settlement agreement, the receiver disbursed $480,000 to Genworth.

to the receiver between March and December 2013 was therefore $1,751,170.81.

Finally, the insurers take issue with the receiver's inclusion of fees incurred, but not disbursed, during the relevant period. Specifically, the receiver seeks retention of interim fees incurred between November 1 and December 31, 2013, which were subsequently approved and paid in early 2014, as well as the twenty percent of fees that are held back until the conclusion of the receivership, pursuant to the receivership order. Those fees total $302,000.[9]

As the Court explained above, although they were not paid during the relevant period, these expenses were incurred in reasonable reliance on rightful ownership of the insurance proceeds, and they will be included in the Court's calculations. The receiver would not have incurred these expenses during this period if she had doubts as to her ownership of more than one million dollars in insurance proceeds. *See, e.g., Lake Gogebic Lumber Co. v. Burns*, 331 Mich. 315, 49 N.W.2d 310, 313 (1951) (personal representative of defendant's estate "assum[ed] liabilities and obligations which would not otherwise have been assumed" and thus changed position in reliance on funds mistakenly paid to the estate). The receiver's ultimate entitlement to the twenty-percent holdback amounts is of course subject to the Court's discretion. Holdback provisions are commonly used to moderate potentially excessive interim allowances and to incentivize the timely resolution of these matters. As such, their payment is conditioned upon final review of the reasonableness of the aggregate fees and the efficiency of the receivership. But the fact that they, like all fee petitions in this matter, are subject to Court approval does not mean those fees were not reasonably incurred. The receiver has established that she detrimentally relied on proceeds paid by the insurers and available to her in the receivership account between March and December 2013.

■ Before the Court today is an assessment of the receiver's reasonable and well-founded belief that she was entitled to rely on life insurance proceeds in expending the estate's assets. Whether the Court ultimately approves the receiver's application for holdback fees is a separate inquiry that will be saved for another day. The receiver's use of funds from March through December 2013 more than adequately establishes that she materially altered her position in reliance on those proceeds. The estate was placed in a decidedly worse position, having assumed obligations and debts in good-faith reliance upon the policy proceeds. The Court will therefore include in its calculations all of the receiver's expenses *incurred* between March 11 and December 31, 2013, not strictly those *disbursed* during that time.

The Court now turns to the relevant calculations.[10]

Total receivership expenses between March 11 and July 8, 2013 were $542,022.87. Household's proceeds represented 23.69 percent of the estate's cash assets at that time. Thus, Household is responsible for $128,390.93 of those expenses.

Total receivership expenses between July 9 and December 31 were $702,709.34.

9. The receiver's sixth application for fees and expenses for services between November 1 and December 31, 2013 totalled $131,000. Fee holdbacks were also made in the following amounts: April 30 ($46,000); July 31 ($41,000); October 31 ($53,000); December 31 ($31,000).

10. All of the Court's calculations are based upon the cash asset and expenditure figures provided by the receiver and uncontested by the insurers.

Household's percentage of the estate's cash assets during that period was 20.71 percent, and it is therefore responsible for $145,551.10 of those expenses. Protective's percentage of the estate's cash during that period was 12.56 percent, and it is therefore responsible for $88,242.06 of those expenses.[11]

The receiver is therefore directed to refund $269,619.61 to Household and $163,268.26 to Protective.

## III. Prejudgment Interest

■ The insurers have also filed a motion for prejudgment interest [285]. Entitlement to prejudgment interest is premised on the principle that when a debt is owed and demand for the funds is made, interest accrues from the time entitlement attached. That is, prejudgment interest is compensation to a plaintiff for the possession and use of funds that were rightly his. *Ins. Co. of N. Am. v. M/V Ocean Lynx*, 901 F.2d 934 (11th Cir.1990).

■ "Whether a successful claimant is entitled to prejudgment interest is a question of state law." *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir.1996) (citation omitted). And in this instance, the parties agree that Georgia law applies to both insurers' claims for prejudgment interest.[12]

■ Georgia law provides that a party recovering money damages is entitled to prejudgment interest if the amount recovered is liquidated. O.C.G.A. § 7–4–15; *Buchanan v. Bowman*, 820 F.2d 359, 362 (11th Cir.1987). A debt is liquidated when it is certain how much is due and when it is due. *Dalcor Mgmt. v. Sewer Rooter, Inc.*, 205 Ga.App. 681, 423 S.E.2d 419, 421 (1992).[13] Where a contract does not specify an interest rate, "pre-judgment interest accrues from the date of demand at a rate of 7 percent per annum." *Great Am. Ins. Co. v. Int'l Ins. Co.*, 753 F.Supp. 357, 364 (M.D.Ga.1990) (citing *Gen. Elec. Credit Corp. v. Strickle Props.*, 861 F.2d 1532

---

**11.** Exhibit A to the Court's Order sets forth a table of the Court's calculations.

**12.** The Household insurance policy was issued in Georgia and is therefore governed by Georgia law. The Protective policy was issued and delivered in Florida and is governed by Florida law. But as set forth in the Court's order on summary judgment, the Court is obliged to apply Georgia's choice-of-law rules, which limit the application of a foreign jurisdiction's laws to statutes and decisions construing those statutes. *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir.1983); *In re Tri–State Crematory Litig.*, 215 F.R.D. 660, 678 (N.D.Ga.2003). Therefore, to the extent no Florida statute controls the issue of prejudgment interest, Georgia common law must apply to Protective's claim as well. The insurers cite Florida Statute § 55.03 as the state's applicable "prejudgment interest statute." But the statute does not govern parties' rights, obligations or duties with regard to prejudgment interest. Instead, the statute merely sets the applicable rate of interest on all judgments in the state— it says nothing of entitlement to or requirements for obtaining prejudgment interest.

The right to and applicability of prejudgment interest is clearly established by Florida common law, not statute. *See Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212, 214–15 (Fla.1985) (confirming entitlement to prejudgment interest as a matter of law "since at least before the turn of the century"); *Underhill Fancy Veal, Inc. v. Padot*, 677 So.2d 1378, 1380 (Fla.Dist.Ct.App.1996); *Chavez v. Mercantil Commercebank, N.A.*, 601 Fed.Appx. 814 (11th Cir.2015) (prejudgment interest rate is only *computed* by statute using a formula based on the average discount rate of the Federal Reserve Bank of New York.) (citing Fla. Stat. § 55.03). Furthermore, the receiver has conceded that Georgia law applies to both of the insurer's claims. And to the extent Georgia law provides for a higher rate of prejudgment interest than Florida and the receiver is the party to be charged, she has acceded to application of such a rate.

**13.** A claim is considered "unliquidated" when there is a bona fide contention as to the amount owing. *Ryan v. Progressive Retailer Publ'g Co.*, 16 Ga.App. 83, 84 S.E. 834 (1915).

(11th Cir.1988)); *see also* O.C.G.A. §§ 7–4–15, –2.

■ The receiver contends that no pre-judgment interest is authorized because the insurers' claims were not liquidated. *See* O.C.G.A. § 7–4–15 (governing liquidated demands only); *Marathon Oil Co. v. Hollis*, 167 Ga.App. 48, 305 S.E.2d 864, 868 (1983). The receiver cites *Holloway v. State Farm Fire & Casualty Co.*, 245 Ga. App. 319, 537 S.E.2d 121, 125 (2000) for the proposition that where a bona fide dispute exists as to damages, interest may not accrue until judgment is entered. But her reliance on *Holloway* is misplaced. In that a case, a suit on a property insurance policy, there were two primary claims one for water damage and one for theft. As to the water damage, the only dispute was the amount of damages caused, a dispute that was not resolved until trial. Thus, the amount was unliquidated for purposes of prejudgment interest. In contrast, as to the claim of theft the defendant contested only liability. The predetermined coverage limit on the allegedly stolen items provided a certain sum that was liquidated for purposes of prejudgment interest. "The fact that State Farm disputed liability at trial did not convert the claim into a claim for an uncertain and, therefore, unliquidated amount." *Holloway*, 537 S.E.2d at 125 (citing *Recordex Corp. v. Se. Metal Prods.*, 147 Ga.App. 79, 248 S.E.2d 159 (1978)). A claim for the total face amount paid on an insurance policy is, as in this instance, fixed, certain, and determined.[14] Before the Court is a reversal of roles between insured and insurer, but the reasoning is no less applicable. The receiver in this action has never contested the amount due. Instead, her defenses to reimbursement were based principally on the voluntary payment doctrine and a theory of equitable estoppel.

Household's claim to the insurance proceeds has been, since Price's discovery in December 2013, specific, certain and fixed in the amount of $543,561.64. Based on the Court's ruling on summary judgment, the recovery of that amount is to be reduced by the reasonable costs incurred by the receiver and attributable to Household between March and December 2013. Protective's claim has likewise been certain and fixed in the amount of $251,510.32, again subject to a deduction of the receiver's claim to reasonable costs attributable to Protective between July and December 2013. That the Court has chosen to award the receiver certain offsets based on reasonably incurred costs does not render the amount unliquidated. *Scovill Fasteners, Inc. v. N. Metals, Inc.*, 303 Ga.App. 246, 692 S.E.2d 840, 845 (2010) (If "the gross amount owing from defendant to plaintiff was ascertained and the substantive dispute revolved around credits chargeable against this amount, the amount of the bill is a liquidated sum. Interest on such a sum is collectible from its due date.") (quoting *Jordan Bridge Co. v. I.S. Bailey, Jr., Inc.*, 164 Ga.App. 124, 296 S.E.2d 107

---

14. *See, e.g., Nat'l Fire Ins. Co. v. Thompson*, 51 Ga.App. 625, 181 S.E. 101 (1935) ("[A] claim for the face amount of a fire insurance policy on a dwelling is deemed to be fixed, certain, and determined under the contract, so as to authorize interest where the loss was admittedly total, and the insurance company neither prior to nor in the suit on the policy in any way questioned the amount but based its sole defense on an alleged forfeiture of the policy by breaches of its conditions."); *Int'l Indem. Co. v. Terrell*, 178 Ga.App. 570, 344 S.E.2d 239 (1986) (where insurance company tendered amount demanded by insured, it could not then argue that the amount of the claim was in dispute and that the claim was therefore unliquidated); *Valiant Ins. Co. v. Birdsong*, 665 F.Supp. 918 (M.D.Ga.1987) (prejudgment interest was appropriate where the amount was at all times certain and fixed and there had been no dispute over whether the sums paid to insured were excessive or in any other way inappropriate).

(1982)); *Gold Kist Peanuts v. Alberson,* 178 Ga.App. 253, 342 S.E.2d 694, 697 (1986) (where there was no dispute as to the specific and certain amount and only disagreement as to whether defendant could enforce an assessment as a reduction against the contract amount, the claim was liquidated); *Recordex,* 248 S.E.2d at 159–60 ("The credit ... only reduced the net balance on the liquidated claim; [it did] not render the [claim] unliquidated.").

Accordingly, the insurers are entitled to prejudgment interest at the rate of seven percent on the full amount of their respective recoveries of the liquidated claims.

## IV. Conclusion

The receiver's motion claiming a portion of the insurance proceeds [284] is granted in part and denied in part, and Plaintiff–Intervenors' motion for prejudgment interest [285] is granted. The Court hereby enters final judgment in favor of Household and against the receivership estate in the sum of $296,552.04 [15] and in favor of Protective Life Insurance and against the receivership estate in the sum of $179,706.01.[16]

## EXHIBIT A

**Allocation of Expenses - March 11 to July 8, 2013**

| Source of funds | | Balance Amount | % |
|---|---|---|---|
| Total estate balance - March 11, 2013 | $ | 2,294,732.41 | 100.00% |
| Household Life Insurance Company | $ | 543,561.61 | 23.69% |
| Genworth Financial | $ | 480,000.00 | 20.92% |
| Other sources | $ | 1,271,170.80 | 55.40% |

| Allocation of expenses | | Amount | % |
|---|---|---|---|
| Total expenses (March 11 to July 8) | $ | 542,022.87 | 100.00% |
| Household Life Insurance Company | $ | 128,390.93 | 23.69% |
| Genworth & Other | $ | 413,631.94 | 76.31% |

**Allocation of Expenses - July 9 to December 31, 2013**

| Source of funds | | Balance Amount | % |
|---|---|---|---|
| Total estate balance - July 9, 2013 | $ | 2,004,411.64 | 100.00% |
| Household Life Insurance Company | $ | 415,170.68 | 20.71% |
| *Original contribution* | *$* | *543,561.61* | |
| *Less March 11 to July 8, 2013 expenses* | *$* | *(128,390.93)* | |
| Protective Life Insurance Company | $ | 251,702.10 | 12.56% |
| Genworth Financial & Other | $ | 1,337,538.86 | 66.73% |
| *Original contribution* | *$* | *1,751,170.80* | |
| *Less March 11 to July 8, 2013 expenses* | *$* | *(413,631.94)* | |

| Allocation of expenses | | Amount | % |
|---|---|---|---|
| Total expenses (July 9 to December 31, 2013) | $ | 702,709.34 | 100.00% |
| Household Life Insurance Company | $ | 145,551.10 | 20.71% |
| Protective Life Insurance Company | $ | 88,242.06 | 12.56% |
| Genworth & Other | $ | 468,916.18 | 66.73% |

**Total Allocation of Expenses - March 11 to December 31, 2013**

| | | Amount |
|---|---|---|
| Total expenses (March 11 to December 31, 2013) | $ | 1,244,732.21 |
| Household Life Insurance Company | $ | 273,942.03 |
| Protective Life Insurance Company | $ | 88,242.06 |
| Genworth & Other | $ | 882,548.12 |

**15.** Sum of $269,619.61 and $27,147.75 (interest at $51.71 per day for 525 days between December 31, 2013 and June 9, 2015).

**16.** Sum of $163,268.26 and $16,437.75 (interest at $31.31 per day for 525 days between December 31, 2013 and June 9, 2015).

**Expense Summary**

| | | Claimed | | Actual | | | Included amount | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL – March 11 through December 31, 2013 | $ | 1,244,732.21 | $ | 942,732.21 | | $ | 1,244,732.21 |
| | Total – March 11 through July 8, 2013 | $ | 542,022.87 | $ | 496,022.87 | | $ | 542,022.87 |
| | Total – July 9 through December 31, 2013 | $ | 702,709.34 | $ | 446,709.34 | | $ | 702,709.34 |

| Date | Expenses incurred | | Claimed | | Actual | Include | | Included amount |
|---|---|---|---|---|---|---|---|---|
| 3/19/2013 | Damian & Valori, LLP | $ | 160,989.27 | $ | 160,989.27 | Yes | $ | 160,989 |
| 3/19/2013 | De Sola Pate & Brown | $ | 16,636.40 | $ | 16,636.40 | Yes | $ | 16,636 |
| 3/20/2013 | Gibraltar Private | $ | 25.00 | $ | 25.00 | Yes | $ | 25 |
| 3/19/2013 | Ver Ploeg Lumpkin PA | $ | 20,249.60 | $ | 20,249.60 | Yes | $ | 20,250 |
| 3/19/2013 | Holland & Knight | $ | 10,242.07 | $ | 10,242.07 | Yes | $ | 10,242 |
| 3/19/2013 | Petit Worrell Craine Wolfe LLC | $ | 27,533.67 | $ | 27,533.67 | Yes | $ | 27,534 |
| 3/19/2013 | Integro Advisors, Inc | $ | 7,999.69 | $ | 7,999.69 | Yes | $ | 8,000 |
| 3/19/2013 | Kapila & Company | $ | 73,383.03 | $ | 73,383.03 | Yes | $ | 73,383 |
| 3/26/2013 | University Park Commerce | $ | 262.99 | $ | 262.99 | Yes | $ | 263 |
| 3/25/2013 | Manatee County Utilities | $ | 44.25 | $ | 44.25 | Yes | $ | 44 |
| 3/25/2013 | Athene Annuity & Life Insurance Co | $ | 156.13 | $ | 156.13 | Yes | $ | 156 |
| 3/25/2013 | Luis Lopez Tree & Lawn Service | $ | 440.00 | $ | 440.00 | Yes | $ | 440 |
| 3/25/2013 | Town of Longboat Key | $ | 29.84 | $ | 29.84 | Yes | $ | 30 |
| 3/25/2013 | FPL | $ | 39.77 | $ | 39.77 | Yes | $ | 40 |
| 3/25/2013 | Ver Ploeg Lumpkin PA | $ | 176.95 | $ | 176.95 | Yes | $ | 177 |
| 4/2/2013 | FPL | $ | 22.86 | $ | 22.86 | Yes | $ | 23 |
| 4/2/2013 | FPL | $ | 59.84 | $ | 59.84 | Yes | $ | 60 |
| 4/2/2013 | FPL | $ | 29.05 | $ | 29.05 | Yes | $ | 29 |
| 4/30/2013 | Fee Holdbacks for Feb 1, 2013 through April 30, 2013 | $ | 46,000.00 | $ | . | Yes | $ | 46,000 |
| 5/7/2013 | Town of Longboat Key | $ | 82.66 | $ | 82.66 | Yes | $ | 83 |
| 5/7/2013 | FPL | $ | 77.66 | $ | 77.66 | Yes | $ | 78 |
| 5/7/2013 | Luis Lopez Tree & Lawn Service | $ | 860.00 | $ | 860.00 | Yes | $ | 860 |
| 5/7/2013 | Manatee County Utilities | $ | 40.56 | $ | 40.56 | Yes | $ | 41 |
| 5/7/2013 | FPL | $ | 58.44 | $ | 58.44 | Yes | $ | 58 |
| 5/7/2013 | FPL | $ | 137.13 | $ | 137.13 | Yes | $ | 137 |
| 5/7/2013 | FPL | $ | 33.81 | $ | 33.81 | Yes | $ | 34 |
| 6/6/2013 | FPL | $ | 33.95 | $ | 33.95 | Yes | $ | 34 |
| 6/18/2013 | Manatee County Utilities | $ | 81.12 | $ | 81.12 | Yes | $ | 81 |
| 6/18/2013 | Damian & Valori, LLP | $ | 88,185.22 | $ | 88,185.22 | Yes | $ | 88,185 |
| 6/18/2013 | Ver Ploeg Lumpkin PA | $ | 23,306.51 | $ | 23,306.51 | Yes | $ | 23,307 |
| 6/18/2013 | Holland & Knight | $ | 3,151.52 | $ | 3,151.52 | Yes | $ | 3,152 |
| 6/18/2013 | Petit Worrell Craine Wolfe LLC | $ | 25,419.59 | $ | 25,419.59 | Yes | $ | 25,420 |
| 6/18/2013 | De Sola Pate & Brown | $ | 6,752.00 | $ | 6,752.00 | Yes | $ | 6,752 |
| 6/18/2013 | Kapila & Company | $ | 26,951.50 | $ | 26,951.50 | Yes | $ | 26,952 |
| 6/18/2013 | Integro Advisors, Inc. | $ | 1,200.00 | $ | 1,200.00 | Yes | $ | 1,200 |
| 7/3/2013 | FPL | $ | 20.12 | $ | 20.12 | Yes | $ | 20 |
| 7/3/2013 | FPL | $ | 42.73 | $ | 42.73 | Yes | $ | 43 |
| 7/3/2013 | Town of Longboat Key | $ | 29.84 | $ | 29.84 | Yes | $ | 30 |
| 7/3/2013 | Manatee County Utilities | $ | 81.73 | $ | 81.73 | Yes | $ | 82 |
| 7/3/2013 | Luis Lopez Tree & Lawn Service | $ | 880.00 | $ | 880.00 | Yes | $ | 880 |
| 7/3/2013 | Richard's workshop | $ | 176.00 | $ | 176.00 | Yes | $ | 176 |
| 7/3/2013 | Eugene Alden | $ | 100.37 | $ | 100.37 | Yes | $ | 100 |
| 7/25/2013 | FPL | $ | 74.19 | $ | 74.19 | Yes | $ | 74 |
| 7/25/2013 | Town of Longboat Key | $ | 62.66 | $ | 62.66 | Yes | $ | 63 |
| 7/31/2013 | Fee Holdbacks for May 1, 2013 through July 2013 | $ | 41,000.00 | $ | . | Yes | $ | 41,000 |
| 8/27/2013 | FPL | $ | 212.17 | $ | 212.17 | Yes | $ | 212 |
| 8/27/2013 | FPL | $ | 40.38 | $ | 40.38 | Yes | $ | 40 |
| 8/27/2013 | Luis Lopez Tree & Lawn Service | $ | 440.00 | $ | 440.00 | Yes | $ | 440 |
| 8/27/2013 | Manatee County Utilities | $ | 2.62 | $ | 2.62 | Yes | $ | 3 |
| 9/19/2013 | FPL | $ | 45.38 | $ | 45.38 | Yes | $ | 45 |
| 9/19/2013 | Luis Lopez Tree & Lawn Service | $ | 280.00 | $ | 280.00 | Yes | $ | 280 |
| 9/19/2013 | Town of Longboat Key | $ | 37.64 | $ | 37.64 | Yes | $ | 38 |
| 9/19/2013 | Damian & Valori, LLP | $ | 101,604.35 | $ | 104,604.35 | Yes | $ | 104,604 |
| 9/19/2013 | Ver Ploeg Lumpkin PA | $ | 30,384.34 | $ | 30,384.34 | Yes | $ | 30,384 |
| 9/19/2013 | Holland & Knight | $ | 1,605.14 | $ | 1,605.14 | Yes | $ | 1,605 |
| 9/19/2013 | Petit Worrell Craine Wolfe LLC | $ | 20,774.06 | $ | 20,774.06 | Yes | $ | 20,774 |
| 9/19/2013 | De Sola Pate & Brown | $ | 5,740.40 | $ | 5,740.40 | Yes | $ | 5,740 |
| 9/19/2013 | Kapila & Company | $ | 22,983.70 | $ | 22,983.70 | Yes | $ | 22,984 |
| 9/19/2013 | Integro Advisors, Inc. | $ | 1,687.91 | $ | 1,687.91 | Yes | $ | 1,688 |
| 10/24/2013 | Luis Lopez Tree & Lawn Service | $ | 160.00 | $ | 160.00 | Yes | $ | 160 |
| 10/24/2013 | Town of Longboat Key | $ | 29.84 | $ | 29.84 | Yes | $ | 30 |
| 10/24/2013 | FPL | $ | 38.82 | $ | 38.82 | Yes | $ | 39 |
| 10/24/2013 | Corporation Services Company | $ | 90.19 | $ | 90.19 | Yes | $ | 90 |
| 10/24/2013 | Corporation Services Company | $ | 90.19 | $ | 90.19 | Yes | $ | 90 |
| 10/24/2013 | Corporation Services Company | $ | 90.19 | $ | 90.19 | Yes | $ | 90 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 10/31/2013 | Fee Holdbacks for August 1 through October 1 2013 | $ | 53,000.00 | $ | · | Yes | $ | 53,000 |
| 11/25/2013 | FPL | $ | 45.22 | $ | 46.22 | Yes | $ | 45 |
| 11/25/2013 | Town of Longboat Key | $ | 29.84 | $ | 29.84 | Yes | $ | 30 |
| 12/17/2013 | Montgomery County Bankshares | $ | 10,345.73 | $ | 10,345.73 | Yes | $ | 10,346 |
| 12/17/2013 | Damian & Valori, LLP | $ | 168,278.56 | $ | 168,278.56 | Yes | $ | 168,279 |
| 12/17/2013 | Ver Ploeg Lumpkin PA | $ | 15,409.90 | $ | 15,409.90 | Yes | $ | 15,410 |
| 12/17/2013 | Holland & Knight | $ | 703.60 | $ | 703.60 | Yes | $ | 704 |
| 12/17/2013 | Bart Meyer & Company | $ | 3,311.00 | $ | 3,311.00 | Yes | $ | 3,311 |
| 12/17/2013 | Petit Worrell Craine Wolfe LLC | $ | 11,069.44 | $ | 11,069.44 | Yes | $ | 11,069 |
| 12/17/2013 | De Sola Pate & Brown | $ | 8,543.60 | $ | 8,543.60 | Yes | $ | 8,544 |
| 12/17/2013 | Kapila & Company | $ | 36,180.05 | $ | 36,180.05 | Yes | $ | 36,180 |
| 12/17/2013 | Integro Advisors, Inc. | $ | 2,919.89 | $ | 2,919.89 | Yes | $ | 2,920 |
| 12/17/2013 | FPL | $ | 45.22 | $ | 45.22 | Yes | $ | 45 |
| 12/17/2013 | Town of Longboat Key | $ | 33.12 | $ | 33.12 | Yes | $ | 33 |
| 12/17/2013 | Luis Lopez Tree & Lawn Service | $ | 320.00 | $ | 320.00 | Yes | $ | 320 |
| 12/31/2013 | 6th interim fees for Nov 1 through December 31, 2013 | $ | 131,000.00 | $ | · | Yes | $ | 131,000 |
| 12/31/2013 | Fee holdbacks for Nov 1 through December 31, 2013 | $ | 31,000 00 | $ | · | Yes | $ | 31,000 |